[Crim. No. 3306. First Dist., Div. One. May 28, 1957.]

THE PEOPLE, Respondent, v. JOHN HURLEY, Appellant.

340

Eugene C. Payne, Jr., under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Marvin A. Christiansen, Deputy Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of first degree robbery, defendant claims insufficiency of the evidence and errors of law during the trial.

(1) *Is the evidence identifying defendant as a participant sufficient? Yes.*

█ The robbery took place in a tavern between 9 and 10 in the evening. It was perpetrated by one Murphy* who took the leading part, issuing the orders and wielding a gun,

---

*Murphy, already convicted of this offense, was called as a defense witness and testified freely as to his own part in the transaction and said that defendant Hurley had no part in it.

assisted by a person who picked up the money and was identified as defendant Hurley by two eyewitnesses, Maloney the bartender and Gately, one of the guests.

Concededly, defendant and Murphy had been friends for a good many years and a few days after the robbery he took an out-of-state trip with Murphy, remaining away until apprehended. These are circumstances suggestive of flight and consciousness of guilt.

Upon being told there were witnesses, defendant said to the officer who accompanied him back from Chicago, "Well, if you have witnesses and that they identify me, I guess I will have to cop out," which the officer said meant to plead guilty.

These were circumstances tending to support the eyewitness testimony.

There was evidence of a contrary character but the jury believed the prosecution's witnesses and resolved the conflict against the defendant.

(2) *Was evidence improperly admitted? No.*

A .32 Colt automatic was identified as the gun which Murphy carried and wielded during the robbery. Maloney, Gately and Murphy each testified that it was of the same type and looked like the gun that Murphy used upon that occasion. Defendant tendered no clearly expressed objection to its admission in evidence. His counsel merely asked: "May I ask for what purpose the gun is being introduced . . . ? It is clear from the testimony that the person who was with Murphy didn't have any weapon or gun."

The fact that Murphy's confederate carried no gun did not render the gun inadmissible. (*People* v. *Jones,* 114 Cal.App. 91, 92-93 [299 P. 559].) Nor need identification of the gun be positive and certain. Concerning testimony that certain rings were similar to rings worn by a murder victim, our Supreme Court in *People* v. *Cullen,* 37 Cal.2d 614, 626 [234 P.2d 1], said: "Certain and positive identification was not required. The evidence of similarity was sufficient to justify the admission in evidence of the rings and other objects, the questions of weight and credibility being for the jury."

Shortly after the robbery Maloney and Gately selected from a number of pictures those of Murphy and the defendant as the perpetrators of the crime. These pictures of these two were offered in evidence. Defendant's was admitted; Murphy's not. We perceive no error in the admission of defendant's

picture. It was cumulative in a sense for the same witnesses identified defendant in person as Murphy's confederate. Proof of identification by means of the picture had a certain value in itself because made much closer in time to the events in issue than was identification at the time of the trial. In *People* v. *Coley,* 61 Cal.App.2d 810, 814-815 [143 P.2d 755], the defendant was identified by means of pictures alone, shortly after the crime. At the time of trial, two and a half years later the witnesses were unable to identify him. No more erroneous would it seem, to permit identification by both methods when available as in this case.

■ Defendant claims that testimony concerning conversations he had with the officer who brought him back from Chicago was erroneously admitted. The court, after correctly defining admissions and confessions, instructed that these statements were not confessions and that it was for the jury to decide whether they constituted admissions. Defendant's theory is that, as a matter of law, they were not even admissions. He is mistaken. His statement about "copping out" tended to show consciousness of guilt. A statement that he understood "it was a tavern," tends to show knowledge of the circumstances of the crime, acquired as a participant. Admission of evidence thereof finds sanction in section 1870, Code of Civil Procedure, which allows evidence of the "act, declaration, or omission of a party, as evidence against such party" (subd. 2), made applicable to criminal actions by section 1102 of the Penal Code. This principle was applied in *People* v. *McKay,* 107 Cal.App.2d 519 [237 P.2d 345], as sanctioning the admission of evidence of quite similar acts, declarations and omissions of a defendant.

We find, also, no error in the instruction given on this subject. We observe that besides defining "admissions" the court appropriately admonished the jury to view with caution any evidence that purports to relate to an oral admission of the defendant.

■ On direct examination defendant testified that though he was not with Murphy between 9 and 10 on the evening of the robbery he had seen Murphy earlier that day and again in the morning of the next day, when Murphy came to defendant's hotel, informed defendant that he "pulled a score last night" and loaned defendant $50. In the cross-examination which followed, defendant was asked, without objection, a number of questions concerning his acquaintance and contacts with Murphy, both before and after the robbery.

His objection comes too late when, as here, it is for the first time made upon appeal. After a good deal of this evidence had gone in, defendant's counsel said merely, "I think we are going a little far afield here." Later, after virtually all of this testimony had gone in, defendant's counsel made his objection more specific. He objected to "conversations" between defendant and Murphy after they left San Francisco, and was sustained.

Moreover, the circumstances of their out-of-state trip (even though they started several days after the robbery) had probative value (in the light of defendant's testimony, on direct, concerning his acquaintance and dealings with Murphy), a basis for an inference that he had knowledge of the crime when he started on his journey with Murphy. (See *People* v. *Bennett*, 122 Cal.App.2d 244, 252 [264 P.2d 664].)

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.