No. 44,352

STATE OF KANSAS, *Appellee*, v. JAMES EDWARD CHILDS, *Appellant*.

(422 P. 2d 898)

Opinion filed January 21, 1967.

*Edward G. Collister, Jr.,* of Kansas City, argued the cause, and *Gerald T. Elliott,* of Kansas City, was with him on the brief for the appellant.

*William L. Roberts,* assistant county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, and *Leo J. Moroney,* county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is a direct appeal in a criminal action in which the defendant, James Edward Childs, was convicted on two counts of first degree robbery (G. S. 1949 [now K. S. A.] 21-527) and sentenced to the state penitentiary for a term of not less than ten nor more than twenty-one years on each count (G. S. 1949 [now K. S. A.] 21-530), said sentences to run consecutively.

The events giving rise to this appeal began on December 5, 1963, late in the evening, when the defendant, while riding as a passenger on a Kansas City Transit Company bus, robbed the driver, George E. Williams, at knifepoint, of approximately $35.50 and also took the purse of a woman passenger. Less than a month later, on January 2, 1964, about 10:00 p. m., defendant boarded another bus owned by the same company, and, as before, at knifepoint, relieved the driver, Burley K. Thomas, of from $50 to $70, then fled.

Both bus drivers, as well as the woman passenger involved in the first occurrence, were able to identify the defendant from police photographs, and he was subsequently arrested. After a preliminary hearing, defendant was bound over to the district court for trial.

Following the appointment of Mr. Albert Grauberger as counsel, the defendant was tried by a jury on April 28, 1964, and convicted on two counts of first degree robbery involving the bus drivers. Defendant filed a motion for new trial, which was overruled, and on May 8 sentence was imposed. Thereafter, defendant filed notice of appeal, Joseph P. Jenkins was appointed counsel, and appeal was perfected. Subsequently, by court order, Mr. Jenkins was replaced by present counsel.

Defendant raises several assignments of error which shall be considered in the order presented in his brief and argument.

He first challenges his conviction on Count II by contending the court erred in failing to rule as a matter of law that one of the essential elements of robbery in the first degree—the taking of property of another by putting him in fear of some immediate injury to his person—had not been proved beyond a reasonable doubt about the driver, Williams. At trial, the question was raised by appropriate motions at the close of the state's evidence as well as after introduction of all the evidence.

The testimony of Williams on direct examination was that when he reached the end of the line at approximately 11:25 p. m., a passenger, later identified by him as the defendant, came up, sat down, and said, "I want all of your money." Williams testified that the defendant had a large knife, open, "stuck up towards my throat" and "he told me if I moved 'I will stab you. I want all of it.'" Being threatened in this manner, Williams yielded to defendant's demand and gave him the money. On cross-examination Williams testified that during the holdup he was frightened, his main thought being to get the man out of the bus as soon as possible. The events of the Williams robbery were corroborated by the woman passenger, Mrs. Settle.

Defendant, although acknowledging the above testimony, argues that it is purely conjecture and speculation to presume that the robbery of Williams was accomplished by putting him in fear of some immediate injury to his person. We are unable to agree.

Although the record does not disclose the court's instructions, it does appear the defendant made no objection to any of them; therefore, we must assume that the jury was adequately and fully informed regarding the elements of the crime.

A contention similar to the one advanced here was before us in the recent case of *State v. Hacker*, 197 Kan. 712, 421 P. 2d 40, in which this court concluded there was ample evidence to support the verdict of guilty. There, it was stated:

"One of the essential elements of robbery in the first degree, where there is no violence to the victim, requires putting the victim in fear of some immediate injury to his person, but there is no exact standard by which to determine when an unlawful taking has been accompanied by putting the victim in fear. It is only necessary to show that the circumstances were such as to cause a reasonable man to apprehend danger, and that he could be reasonably expected to give up his property in order to protect himself. A causal relationship, how-

ever, must be established between acts of the defendant and the surrender of the property by the victim." (Syl. ¶ 4.)

The jury, as the exclusive judge of all material questions of fact, is also entitled to draw reasonable inferences from the evidence. (*State v. Greenwood,* 197 Kan. 676, 421 P. 2d 24; *State v. Jensen,* 197 Kan. 427, 417 P. 2d 273.) Here, implicit in the jury's verdict of guilty, was a finding that the acts of the defendant were such as to reasonably induce fear in the victim, and that Williams gave up his property because of this apprehension. These were reasonable inferences, fully warranted from the evidence adduced. When measured by the rule announced in *Hacker,* the sufficiency of the evidence to support the conviction is beyond legitimate question. Hence, the jury's verdict will not be disturbed.

Defendant next asserts the court erred in (a) denying defendant's motion for appointment of a commission, pursuant to K. S. A. 62-1531, and (b) failing to order an examination when, during trial, it appeared defendant might not be capable of standing trial.

Counsel candidly concedes the record is devoid of any proceedings showing an examination was requested. Under such circumstances, there is nothing for us to review. We are informed in defendant's brief, however, that counsel approached the judge prior to trial and presented papers ready for filing whereby the appointment of a commission was requested—specific mention being made that defendant was an alcoholic. Defendant says trial counsel was informed by the judge, "This was not the proper way to bring that matter to the court's attention."

There was also testimony at the trial that in 1944 Childs was a patient in a mental institution at Fulton, Missouri. In 1956 he suffered a paralytic stroke and he complained of many physical ailments up to and during the trial, including high blood pressure, asthma, nervousness, fainting spells and blackouts.

Defendant now argues that because of the knowledge gained by the trial court from the informal request for an examination, as well as from the other evidence pertaining to the defendant's physical and mental condition, it was the court's duty to make some inquiry on its own initiative, and its failure to do so constituted an abuse of discretion.

In this jurisdiction the sanity of an accused, for the purpose of his being put on trial, is determined by his present ability to comprehend his position, understand the nature and object of the pro-

ceedings against him, and to conduct his defense in a rational manner. Thus, if the accused is capable of understanding the nature and object of the proceedings pending against him, if he comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound. (K. S. A. 62-1531; *Van Dusen v. State*, 197 Kan. 718, 421 P. 2d 197; *State v. Wheeler*, 195 Kan. 184, 403 P. 2d 1015; *State v. Cox*, 193 Kan. 571, 396 P. 2d 326, cert. denied 380 U. S. 982, 14 L. Ed. 2d 276, 85 S. Ct. 1350; *State v. Kelly*, 192 Kan. 641, 391 P. 2d 123; *State v. Severns*, 184 Kan. 213, 336 P. 2d 447.)

The manner in which the necessity arises for an inquiry into the sanity of an accused for trial purposes is of little importance. If the court, from observation, reasonable claim or credible source, concludes there is a real doubt concerning the sanity or mental ability of an accused to comprehend his situation or make his defense, it is the duty of the court to order an inquiry, even though not requested. Whether the court on its own initiative should order such an inquiry is a matter addressed to its sound judicial discretion, and in the absence of an abuse of that discretion its decision will not be disturbed. (*Van Dusen v. State*, supra; *State v. Wheeler*, supra; *State v. Kelly*, supra; and cases cited therein.)

Assuming an informal request for an examination was made by trial counsel, based on the defendant's propensity for drinking excessively, the provisions of K. S. A. 62-1531 do not apply to alcoholics. (*State v. Wheeler*, supra.) The only evidence of consequence relating to defendant's mental condition pertained to his confinement in a mental institution in 1944. Notwithstanding his unfortunate physical infirmities, there was no evidence whatsoever suggesting any mental impairment at the time of trial. After a thorough search of the record we are unable to conceive how the experienced trial judge could have entertained any real doubt of defendant's sanity or his mental ability to stand trial. We therefore conclude that the court did not abuse its discretion in failing to order an inquiry on its own initiative.

Defendant next complains the court erroneously admitted testimony of certain witnesses regarding their identification of the defendant from police photographs, and regarding the arrest and incarceration of the defendant for other unknown crimes. The

essence of defendant's argument is that the effect of the testimony was to make the jury fully aware that he had been arrested in Kansas City, Missouri, and confined to Leeds, the municipal farm; and further, that he had been identified by the witnesses by means of "mug shots" from police files. Defendant's entire argument is predicated on what was stated in the dissenting opinion of Mr. Justice Fontron in *State v. Minor*, 195 Kan. 539, 407 P. 2d 242.

The testimony concerning identification of the defendant from police photographs was that of Williams and Thomas, the two bus drivers, and Mrs. Settle, the woman passenger.

The substance of Williams' and Thomas' testimony was that subsequent to the robberies they went to the police department, viewed numerous photographs, and from the pictures shown to them identified one of the defendant as being the individual who robbed them. Mrs. Settle testified that from pictures brought by a detective to her for her to view she identified one of the defendant as the person who committed the robbery she had witnessed.

Although Williams' testimony about the pictures was objected to at the trial, we note that no objection was interposed to the testimony of Mrs. Settle or Thomas. All three witnesses testified they also identified the defendant in a lineup at the police station, and at the trial each made positive identification of him as the robber. Defendant's objection to Williams' testimony was that reference to the picture was, in effect, reference to the defendant's "character." Defendant now argues, as did the appellant in *Minor*, that admission of the testimony over his objection when the issue of credibility had not been raised by him was in violation of K. S. A. 60-421. We are unable to agree.

This court has held the testimony of a witness as to the identity of an accused is admissible if based upon the accused's voice, features, or other distinguishing characteristics (*State v. Hill*, 193 Kan. 512, 394 P. 2d 106; *State v. Nixon*, 111 Kan. 601, 207 Pac. 854; *State v. Herbert*, 63 Kan. 516, 66 Pac. 235), including the extrajudicial identification of an accused in a police lineup (*Peterson v. State*, 198 Kan. 26, 422 P. 2d 567; *State v. Hill*, supra).

Although the courts are somewhat divided as to the competency of evidence of extrajudicial identification, there is respectable authority holding that prior identification of an accused may be shown by the testimony of the identifying witness in corroboration of the

testimony of the same witness identifying the accused at the trial. (20 Am. Jur., Evidence § 353; 22A C. J. S., Criminal Law § 725; Anno. 71 A. L. R. 2d 449; 1 Wharton, Criminal Evidence §§ 181, 182 [12th ed. 1955]; 4 Wigmore, Evidence § 1130 [3d ed. 1940].) The rationale of many of the cases appears to be that evidence of former identification made under proper circumstances is impressed with such trustworthiness as to entitle it to consideration by the jury (e. g., People v. Hurley, 151 Cal. App. 2d 339, 311 P. 2d 49; Basoff v. State, 208 Md. 643, 119 A. 2d 917). Professor Wigmore points out that identification of an accused in the courtroom often is of little testimonial force, and that it is entirely proper to corroborate the testimony of a witness by proving that at a prior time he had recognized and declared the accused to be the guilty person.

We think the reasoning adopted by the authorities favoring the admission into evidence of the extrajudicial identification of an accused is sound and should be applied where, as in the instant case, prior identification is made from photographs. (People v. Hurley, supra; People v. Tunstall, 17 Ill. 2d 160, 161 N. E. 2d 300; Colbert v. Commonwealth (Ky.), 306 S. W. 2d 825, 71 A. L. R. 2d 442 [reversed on another ground]; Solf v. State, 227 Md. 192, 175 A. 2d 591; State v. Dancyger, 29 N. J. 76, 148 A. 2d 155, cert. denied 360 U. S. 903, 3 L. Ed. 2d 1255, 79 S. Ct. 1286; State of Oregon v. Lanegan, 192 Ore. 691, 236 P. 2d 438. See State v. Rafferty, 145 Kan. 795, 67 P. 2d 1111, in which the testimony was held to be admissible on redirect examination of a witness.)

In Judy v. State, 218 Md. 168, 146 A. 2d 29, it was held that a witness, who had on a previous occasion identified a photograph of the defendant, could subsequently testify about the extrajudicial identification, the court observing that such evidence was admissible to corroborate the witness and bolster his credibility, if for no other reason.

We hold, therefore, it was proper to admit testimony of the witnesses Williams, Settle and Thomas that they had previously identified the defendant from photographs furnished by the police. The means or manner in which the extrajudicial identification is made relates to the weight and sufficiency of the evidence rather than its admissibility. (State v. Hill, supra.) Here, the identity of the defendant was an issue at trial, and the testimony of the three witnesses merely corroborated the subsequent positive judicial identification.

The evidence about which the defendant complains as showing his prior arrest and incarceration consisted of testimony by Detectives Patton and Brown.

On direct examination Patton was asked what he did in connection with the investigation of the two holdups. He replied he had received information that Childs would be a good suspect in both offenses, and that thereafter he ran a check and found Childs had been arrested in Kansas City, Missouri. The court *sua sponte* admonished the witness that such evidence was not competent, and asked the jury to disregard it. The propriety of the question itself is debatable. It plainly was a "loaded" question that could call for a variety of answers, many of which would be prejudicial to the defendant; however, no objection to the question was voiced. The court promptly directed the jury to disregard the answer, and under such circumstances, defendant cannot now claim prejudicial error. (See *United States v. Stromberg*, 268 F. 2d 256 [2d Cir. 1959]; cf. *Tallo v. United States*, 344 F. 2d 467 [1st Cir. 1965].)

Patton was then asked if he had ever had occasion to show pictures of the defendant to anyone, and he replied, "I did. I secured mug shots—" Defense counsel objected to the term "mug shots" as going to the "character" of the defendant. Following a discussion at the bench out of the hearing of the jury Patton was again asked the question, and he replied he had shown the pictures to Thomas and Williams. Despite the objection, the defendant did not insist that the court make a ruling thereon, and thus may be said to have waived his objection to the testimony. (53 Am. Jur., Trial § 143.) The court, instead of ruling on the objection, merely called the witness to the bench. We can only surmise what transpired at the side-bar conference. At any rate, the original question was repeated, and the officer responded directly thereto without further reference to "mug shots."

That portion of the officer's answer, "I secured mug shots," was clearly unforeseeable, and, in fact, was an unresponsive answer to a proper question; therefore, it was incumbent on the defendant to move to strike the objectionable portion of the answer. The rule is well stated in *State v. Gray*, 55 Kan. 135, 39 Pac. 1050:

". . . Where a proper question is asked, and an improper answer given, the only remedy of the aggrieved party is by motion to strike out. It is impossible for the court in advance to exclude an improper answer to a proper question. The propriety of the answer cannot, in the nature of things, be determined before it is given." (p. 140.)

Also, see *Mo. Pac. Rly. Co. v. Shumaker,* 46 Kan. 769, 27 Pac. 126, *State v. Earnest,* 56 Kan. 31, 42 Pac. 359, and cases cited in 5 Hatcher's Kansas Digest, Trial § 30.

Similarly, if the witness answers so quickly that an objection cannot be made prior to the answer, a motion to strike is the proper remedy. (*People v. Cucco,* 85 Cal. App. 2d 448, 193 P. 2d 86.)

Notwithstanding the procedural shortcomings which normally would preclude review by this court, we have examined the record and are of the opinion the reference to "mug shots".did not result in prejudicial error under the circumstances narrated. Nothing said herein, however, is to be construed as placing our stamp of approval on this type of testimony, regardless of whether the reference was intentional or inadvertent. We specifically condemn the tactics often employed by overzealous witnesses of injecting clearly incompetent testimony, not otherwise admissible, which implies the accused has a prior criminal record, in an obvious effort to create prejudice in the minds of the jury. Decisions in which the admission of such testimony has been held not to have resulted in prejudicial error must be confined to the specific facts of each case rather than an indication of carte blanche approval of the practice.

In *State v. Minor,* supra, we held as admissible testimony on redirect examination that the officer had checked F. B. I. "rap sheets," including a "mug shot" of defendant, and that from such photograph the complaining witness had identified the defendant. There, however, the officer had been cross-examined as to his investigation of the case, and the details of the investigation were opened up by the defendant himself.

In *State v. Owens,* 15 Utah 2d 123, 388 P. 2d 797, it was held that testimony by a witness concerning presentation by police to him of "mug shots" and his identification of the defendant in one of the pictures was not prejudicial error. There, however, we note the testimony was elicited on redirect examination after the witness had been cross-examined on the issue of identification of the accused. Also, see *Colbert v. Commonwealth,* supra, in which identification of the defendant's picture from a "rogue's gallery" maintained at the police station was held proper, the court noting that any suggestion from this evidence that the defendant was guilty of other possible crimes was incidental and remote.

Detective Brown's testimony to which the defendant objects concerns Brown's answer on cross-examination to the question: "Have

you on any other occasion had a chance to talk to Mr. Childs in the County Jail?" Brown's reply was: "I talked with him afterwards. He was confined at Leeds." Objection was made by the prosecution, and the court instructed the witness to "Just answer the question."

The question posed to Brown was proper; the answer, however, was not responsive. The remedy in such instance is by a motion to strike the unresponsive portion of the answer. Defendant, in failing to make such a motion, cannot now complain. Furthermore, there is no showing here that the reference to "Leeds" carries with it a connotation that it is a place of penal incarceration, such as de-·fendant's argument implies.

After a careful examination of the record it is apparent from the spontaneity of the trial judge's rulings he was fully aware of the danger fraught by the testimony of the two detectives. The defendant offered no motion for mistrial, and we are not prepared to say that such a motion, even if filed, should have been acted on favorably. The court, in overruling defendant's motion for new trial, apparently was satisfied that he had been afforded a fair trial, and under the facts here, we agree.

Defendant, in his last specification of error, which includes the overruling of his motion for new trial, advances no new argument other than that previously presented and considered in his other assignments of error.

The judgment is therefore affirmed.

FONTRON, J., dissenting: For reasons appearing in my dissenting opinion in *State v. Minor,* 195 Kan. 539, 407 P. 2d 242, I am unable to agree with the majority opinion.

I am still concerned over the admission of evidence relating to "mug shots" and police photographs at the trial of an accused where his character has not been placed in issue.

Such a practice, in my judgment, necessarily impugns the fairness of the proceedings and should not be tolerated.