No. 49,303

STATE OF KANSAS, *Appellee*, v. MICHAEL RAY SOLES, *Appellant.*

(585 P.2d 1032)

Opinion filed October 28, 1978.

*William Cather,* of Wichita, argued the cause and was on the brief for the appellant.

*Stephen Robison,* assistant district attorney, argued the cause, and *Curt T. Schneider,* attorney general, *Vern Miller,* district attorney, and *Stuart W. Gribble,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: This is an appeal by defendant Michael Ray Soles from a jury verdict finding him guilty of three counts of first degree murder (K.S.A. 21-3401), one count of aggravated burglary (K.S.A. 21-3716), seven counts of aggravated battery (K.S.A. 21-3414), and one count of aggravated assault (K.S.A. 21-3410). The charges stem from a shooting spree carried out by Soles on August 11, 1976, from atop the highest building in downtown Wichita.

The facts are undisputed. Michael Ray Soles took his 30-30 rifle, the shells he had made that morning, and an extra gun, and drove to the Holiday Inn in downtown Wichita, stopping only once to buy more shells. After reaching the hotel, he parked his car and went to the top of the building. The roof was inaccessible, so he forced a maid out of a room on the twenty-sixth floor and went in, locking the door behind him. He then began shooting out of the window toward the street below. The shooting spree left three persons dead and seven wounded. He was finally apprehended and taken into custody by the police. He appeals from his convictions on the above charges.

Defendant contends he lacked competency to stand trial. The competency hearing was held on September 15, 1976, at which time Dr. Sayed Jehan of the Sedgwick County Mental Health Clinic presented testimony based upon his examination of defendant on August 25, 1976. Defendant first argues Dr. Jehan did not have all the evidence with which to make a proper evaluation because he did not have access to a state-ordered psychiatric evaluation report made on August 11, and because Dr. Jehan was not aware of the observations of a sheriff's detective made on August 17. Both the psychiatrist's report and the detective's observations noted that defendant purported to be in a trance-like state. In addition, defendant contends Dr. Jehan did not have the benefit of the report of Dr. T. A. Moeller, who had administered a Thematic Apperception Test to defendant. He claims the state was obligated to present this additional evidence at the competency hearing and that failure to do so resulted in an invalid evaluation.

In addition to the above mentioned tests and reports which appear to have been made before the competency hearing, defendant claims the trial court erred in not considering the October, 1976, court-ordered examination concerning Soles' mental state, the testimony at trial of a Dr. Leslie Ruthven, a ten-year-old report on Soles made by the Children's Medical Center, and observations of officers and a fellow prisoner regarding defendant's behavior after court recessed for the day on December 21, 1976.

K.S.A. 22-3301 governs the test for determining competency to stand trial:

"(1) For the purpose of this article, a person is 'incompetent to stand trial' when he is charged with a crime and, because of mental illness or defect is unable:
"(a) to understand the nature and purpose of the proceedings against him; or
"(b) to make or assist in making his defense.
"(2) Whenever the words 'competent,' 'competency,' 'incompetent' and 'incompetency' are used without qualification in this article, they shall refer to the defendant's competency or incompetency to stand trial, as defined in subsection (1) of this section."

Also, the test is stated in the often quoted case of *State v. Severns,* 184 Kan. 213, 336 P.2d 447 (1959):

"[T]he test of insanity of an accused precluding his being *put on trial* for a criminal offense is his capacity to comprehend his position, understand the nature and object of the proceedings against him and to conduct his defense in a rational

manner. Stated in different fashion, if the accused is capable of understanding the nature and object of the proceedings going on against him; if he rightly comprehends his own condition with reference to such proceedings, and can conduct his defense in a rational manner, he is, for the purpose of being tried, to be deemed sane, although on some other subject his mind may be deranged or unsound." (p. 219.)

See also *State v. Gilder,* 223 Kan. 220, 574 P.2d 196 (1977); *State v. Holloway,* 219 Kan. 245, 547 P.2d 741 (1976); *State v. Randol,* 212 Kan. 461, 513 P.2d 248 (1973); *State v. Hamrick,* 206 Kan. 543, 479 P.2d 854 (1971); *State v. Childs,* 198 Kan. 4, 422 P.2d 898 (1967); *Van Dusen v. State,* 197 Kan. 718, 421 P.2d 197 (1966); *Kiser v. State,* 196 Kan. 736, 413 P.2d 1002 (1966).

Dr. Jehan's report appears to make a clear distinction between the emotional stress defendant was experiencing and his inability to cope with anger and hostility, as opposed to his ability to understand the nature of the proceedings against him. His report states Soles' memory and concentration were good throughout the examination and, although the doctor recommended Soles be treated to learn how to vent his frustrations in a normal manner, Soles was not suffering from any psychosis at that time and was, in the doctor's opinion, competent to stand trial.

A reviewing court is limited to an inquiry into whether the trial court's finding of competency amounted to an abuse of discretion. *State v. Gilder,* 223 Kan. at 224-25; *State v. Lewis,* 220 Kan. 791, 796, 556 P.2d 888 (1976); *Johnson v. State,* 208 Kan. 862, 863, 494 P.2d 1078 (1972); *State v. Childs,* 198 Kan. at 8. There is no evidence to suggest the trial court abused its discretion in ordering defendant competent to stand trial, based upon Dr. Jehan's report. Also, there has been no showing the state deliberately withheld from the trial court's consideration the reports taken before the competency hearing. We note, however, all reports and observations made both before and after the competency hearing were eventually presented at trial.

K.S.A. 1977 Supp. 22-3302 allows a defendant, his counsel, or the prosecuting attorney upon request, or the judge upon his own observations, to request a determination of the defendant's competency to stand trial at any time after defendant has been charged and before sentencing. The record does not indicate any of the parties made such a request. The trial court duly noted defendant's behavior during court and heard the testimony of those witnesses who observed defendant after court recessed on

December 21, 1976. The court did not believe defendant's competency to stand trial had been impaired by the incident and proceeded with the trial. Under the circumstances, we find the trial court did not err in failing to order a determination of competency based upon the later evidence submitted at trial.

Defendant also contends he was unable to assist in his defense due to amnesia, to which Dr. Jehan alluded in his report. We have spoken on the effect amnesia may have on a defendant's competency to stand trial and do not deem it necessary to belabor the point here. See *State v. Gilder,* 223 Kan. at 224; *State v. Blake,* 209 Kan. 196, 495 P.2d 905 (1972); *State v. Severns,* 184 Kan. at 218. We see no evidence the trial court abused its discretion as to the competency of defendant to stand trial.

Defendant's second contention goes to the relevancy and possible inflammatory nature of the state's evidence. Defendant believes that when the facts of the crime have been stipulated to in advance and counsel has given notice it is using an insanity defense, the introduction into evidence of photos, in particular those of the victims, is irrelevant and inflammatory to the jury. He complains of the admission of black and white photographs of the victims as they lay in the street after the shooting, color slides of the insides of various automobiles filled with blood, sacks containing clothing, papers and film cannisters covered with blood, and chat samples taken from a roof to show the roof was blood-stained. The state argues the evidence was admitted in order to prove defendant acted deliberately, willfully, knowingly and with premeditation.

We have viewed the photographs and slides submitted by the parties and we do not find them shocking or gruesome to the point of prejudicing the jury. In view of defendant's insanity defense, it was necessary for the state to prove defendant acted knowingly and with premeditation in order to prove its case in chief. Photographs offered to prove the elements of the crime, the fact and manner of death, the violent nature of the death, and to corroborate the testimony of other witnesses are relevant and admissible. *State v. Campbell,* 210 Kan. 265, 276, 500 P.2d 21 (1972); *State v. Martin,* 206 Kan. 388, 390, 480 P.2d 50 (1971); *State v. Johnson,* 201 Kan. 126, 129, 439 P.2d 86 (1968). Defendant heatedly complains of the showing of Exhibit No. 228, a color slide of the nude and bloody body of one of the victims lying on a morgue

table. The slide had not been admitted into evidence and defendant contends it was shown to inflame the jury. We find no evidence to indicate the showing of this exhibit was anything more than accidental. Some of the photographs and exhibits may have been repetitious and irrelevant, but in view of the evidence itself we do not find their admission into evidence resulted in prejudice to defendant.

Defendant next contends the prosecutor's presence in the jury box while illustrating an exhibit and questioning a witness was prejudicial to defendant and exemplified the prosecutor's "fraternization" with the jury. The trial court's statements indicate the exhibit was located at the end of the jury box, approximately six feet from the nearest juror, because of space limitations in the courtroom and because of "voluminous exhibits" occupying other areas of the courtroom. The statements of the court also indicate the prosecutor was not in the jury box, but was in the six-foot area between the exhibit and the jury box. We cannot condone a prosecuting attorney's presence in the jury box while questioning witnesses or illustrating exhibits. Such action could constitute fraternization with the jury and result in prejudice to the defendant. In the case at hand, however, the trial court noted the prosecutor was near the jury box because of space limitations and no prejudice was shown due to the attorney's actions. We adhere to the rule which leaves questions regarding the propriety of the prosecuting attorney's conduct in examining or cross-examining witnesses to the sound discretion of the trial court. 23A C.J.S., Criminal Law § 1087, p. 116 (1961). We do not believe the trial court abused that discretion.

Defendant contends he was denied access to a state's witness after he made an informal request of the prosecutor to speak with the witness before trial on January 6, 1977. The facts are in dispute regarding this incident and defendant has offered no affidavits from witnesses to substantiate his allegations. The record does not show a calculated attempt by the prosecutor to keep the defense counsel from the witness. Also, we note the witness was endorsed early in the proceedings and defendant does not indicate an inability to contact her before trial. Defendant has shown no prejudice resulting from his failure to interview the witness and we must dismiss his argument on appeal.

Defendant alleges impropriety on the part of the prosecutor and

the trial judge in reference to the questioning of one of defendant's witnesses. The record indicates the prosecutor attempted to interview Dr. Leslie Ruthven prior to trial. When the witness refused to talk with the prosecutor the trial judge was summoned and he ordered the witness to answer the prosecutor's questions. The record also indicates that the witness fully testified at trial concerning conclusions as to the mental state of defendant. The judge's direction to the witness to answer to prosecutor's questions without further explanation of the witness's right might result in trial error in some instances. Here, we cannot magnify that error to constitute reversible error because Dr. Ruthven was able to testify fully. We find no harm resulted to defendant and the contention is without merit.

Defendant's next contention refers to the exclusion of a transcription of Officer Henry Salman's account of his interrogation of defendant. The officer interrogated Soles at the scene of the crime, took notes in his notebook, made a tape of those notes at the station in a debriefing, and the debriefing session was later transcribed by a third person. Defendant wanted the transcription, done by a third person, admitted into evidence. The court sustained the state's objection to the transcription, noting there had been no testimony showing the transcription to be an accurate reproduction.

Defense counsel attempted to establish the proper foundation for the evidence by cross-examining Officer Salmans as to possible inconsistencies between the officer's notebook and the transcription; however, the record does not indicate the defense called the officer who actually transcribed the tape in order to authenticate the transcription. Officer Salmans recognized the transcription, but since he did not type the report from the tape he could not testify as to its authenticity. The court properly sustained the objection on the basis of improper foundation for the introduction of evidence.

Defendant argues pretrial publicity so inflamed the community and the state at large that he could not have received a fair trial anywhere in the state; therefore, he filed no motion for a change of venue. Other than evidence that the tragedy was thoroughly covered by the newspapers and television stations, defendant has made no showing that publicity reached such magnitude as to deny him a fair trial. The mere publication of news articles does

not establish prejudice per se which would deny the defendant a fair and impartial trial in the community. *Green v. State,* 221 Kan. 75, 76, 558 P.2d 110 (1976); *State v. McCorgary,* 218 Kan. 358, 543 P.2d 952 (1975), *cert. denied* 429 U.S. 867, 50 L.Ed.2d 147, 97 S.Ct. 177 (1976). Even though a criminal matter is widely covered and reported by the news media, it does not follow without further evidence that such prejudice exists which might reasonably prevent a fair trial. *Green v. State,* 221 Kan. at 76; *State v. Lamb,* 209 Kan. 453, 497 P.2d 275 (1972). Defendant's only remedy was to file a motion for a change of venue and this court has stated that it will not consider allegations of prejudicial publicity claimed to have affected the fairness and impartiality of the trial proceedings where the defendant neither sought a change of venue below nor raised any objection to such publicity during the trial. *State v. Platz,* 214 Kan. 74, 76, 519 P.2d 1097 (1974).

After carefully examining the issues on appeal, we find them to be without merit. The judgment of the trial court is affirmed.