NOT DESIGNATED FOR PUBLICATION

No. 118,311

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN C. CHURCH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed July 5, 2019. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before STANDRIDGE, P.J., GARDNER, J., and WALKER, S.J.

PER CURIAM: Steven C. Church directly appeals his convictions by a jury of rape and aggravated indecent liberties with a child. On appeal, Church claims his convictions are based on insufficient evidence. Church also argues that the district court erred by failing to instruct the jury to consider the victim's testimony without sympathy, in denying his motion for a mistrial, and in denying his motion to suppress his statements to police. Because we find no errors requiring reversal, Church's convictions are affirmed.

1

In 2016, V.R. told her soon-to-be adoptive father S.D. that she needed to tell him a secret; she was 10 years old at the time. V.R. told S.D. that a man she knew as "Zero" was babysitting her when she woke up to him naked in her bed and under the covers with her. Specifically, V.R. explained that she fell asleep watching television and when she awoke to something touching her, she lifted her covers to find Zero in her bed and naked. This event was alleged to have occurred between October 2012 and January 2013 when V.R. was only six or seven years old. Knowing Zero was the nickname for Church, one of V.R.'s biological mother's friends, S.D. relayed the information to his wife before also reporting it to the police.

After the report, police began investigating the incident. As a part of the investigation, police interviewed V.R., Church, and Church's wife Shirley McCabe. The investigation yielded no physical evidence of the crime.

During Church's interview with police, he initially denied the allegation against him but eventually confessed to having various sexual contacts with V.R. Specifically, Church confessed to penetrating V.R.'s vagina with his penis and to having V.R. fondle his penis with her hand. Church told police that the sexual contact occurred at his home when V.R. was approximately six or seven years old. V.R. gave a similar explanation of the events but added that Church also put his penis in her mouth.

As a result of the investigation, the State charged Church with rape, aggravated criminal sodomy, and aggravated indecent liberties with a child.

At trial, Church testified that he never had sexual contact with V.R. and that he only confessed to police to stop the questioning. V.R. testified that Church did engage in

various sexual acts with her but no longer thought Church put his penis in her mouth. As a result of that testimony, the State dismissed the aggravated criminal sodomy charge.

Ultimately, a jury convicted Church of the two remaining counts—rape and aggravated indecent liberties with a child. Church was sentenced to life in prison without the possibility of parole for 25 years.

Church has timely appealed his convictions. We will add additional facts in discussing the issues on appeal.

ANALYSIS

*Does sufficient evidence support Church's conviction?*

Church argues that there was insufficient evidence to find him guilty beyond a reasonable doubt.

The law regarding sufficiency of evidence is well settled:

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

Church has numerous complaints about the evidence presented against him in this case. He maintains that because the State's case lacked physical and forensic evidence and eyewitness testimony, it was weak and did not amount to sufficient evidence. Church further contends that this is a "'he said/she said' case in which the credibility of the parties was crucial." Church also emphasizes that there was testimony regarding his low IQ and tendency to "agree with people to avoid uncomfortable situations."

The analysis Church asks us to conduct, however, would require that we reweigh evidence and decide the credibility of the victim's testimony. But when a verdict or trial court decision is challenged for insufficiency of evidence or as being contrary to the evidence, we cannot reweigh the evidence or pass on the credibility of the witnesses. If the evidence, when considered in the light most favorable to the prevailing party, supports the verdict, the verdict will not be disturbed on appeal. *Wolfe Electric, Inc. v. Duckworth*, 293 Kan. 375, 407, 266 P.3d 516 (2011).

Here, the jury heard testimony from the victim and an admission from Church during his interview with police. That information was enough to prove the elements of both rape and aggravated indecent liberties with a child. V.R. testified that Church kissed her, penetrated her vagina with his penis, and put his penis in her hand. Church admitted to those actions. Although Church attempts to cloud the analysis with assertions regarding his low IQ, those assertions are irrelevant here. The victim's testimony and Church's confession were enough to support the jury's conviction.

*Did the district court err in failing to give a no-sympathy instruction?*

Church argues that the district court erred when it failed to sua sponte instruct the jury to consider the victim's testimony without sympathy. The State asserts that this case is not one of the unique cases in which the no-sympathy instruction was factually appropriate. The State furthers its argument by pointing out that there is no Kansas

4

caselaw supporting Church's argument and that Church does not demonstrate clear error requiring reversal on this issue.

The rules surrounding our review under these circumstances are clear:

"When analyzing jury instruction issues, we follow a three-step process: '(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step. 307 Kan. at 317; K.S.A. 2018 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."). At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. *McLinn*, 307 Kan. at 318.

When we apply the clear error standard at the third step because the party did not object to the jury instruction below, we will only reverse the district court if an error occurred and we are firmly convinced that the jury would have reached a different verdict if the instruction error had not occurred. The party claiming a clear error has the burden to demonstrate the necessary prejudice. *McLinn*, 307 Kan. at 318.

In evaluating whether an instruction rises to the level of clear error, the issue of "[r]eversibility is subject to unlimited review and is based on the entire record. It is the defendant's burden to establish clear error under K.S.A. 22-3414(3)." *State v. Betancourt*, 299 Kan. 131, 135, 322 P.3d 353 (2014). The clear error determination must review the

5

impact of the erroneous instruction in light of the entire record including the other instructions, counsel's arguments, and whether the evidence is overwhelming. *In re Care & Treatment of Thomas*, 301 Kan. 841, 849, 348 P.3d 576 (2015).

"To establish clear error, 'the defendant must firmly convince the appellate court that the giving of the instruction would have made a difference in the verdict.' [Citation omitted.]" *State v. Cooper*, 303 Kan. 764, 771, 366 P.3d 232 (2016).

Church concedes that the no-sympathy instruction was not requested before the district court. Still, Church argues that because the victim was 10 years old when she gave her testimony, was six or seven years old when she was assaulted, and while testifying held onto a stuffed animal which she described as her "'worry eater,'" the instruction was required to ensure the jury did not give in to their prejudices or sympathies. Although the facts of V.R.'s assault in relation to her age are disturbing, they are not so unique that failure to give the instruction was clearly erroneous. After a careful review of the record, we are not convinced that the jury would have reached a different verdict if the instruction had been given.

Both parties acknowledge that the no-sympathy instruction is no longer included in the standard PIK instructions and that our Supreme Court has recognized that the instruction has been disapproved for general use. See *State v. Jones*, 298 Kan. 324, 338-39, 311 P.3d 1125 (2013); *State v. Baker*, 281 Kan. 997, 1004, 135 P.3d 1098 (2006). Our Supreme Court has also held that "a no-sympathy instruction is only legally appropriate in very unusual circumstances." *State v. Williams*, 299 Kan. 1039, 1044, 329 P.3d 420 (2014).

The State correctly notes that Church's brief has failed to provide us with a factually similar instance in which our appellate courts have granted relief on these grounds. But Church does cite *State v. Rhone*, 219 Kan. 542, 548 P.2d 752 (1976), in

6

which the victim was dying from cancer when she was required to testify. In that case, the judge, jury, and defendant were required to go to the victim's house to hear her testimony. Under those unique circumstances, our Supreme Court held that the district court adequately instructed the jury that "neither prejudice nor sympathy should be allowed to influence the verdict." 219 Kan. at 545.

However, we believe *Rhone* has little applicability here. Constructively moving an entire courtroom to the bedside of a dying victim is such a dramatic and factually singular event, and one without precedent in our caselaw, that our Supreme Court felt the unique circumstances were best left to the trial court's discretion. There are fact patterns in other Kansas cases which are more similar to ours.

The State cites *Baker*, 281 Kan. 997; *State v. Holmes*, 278 Kan. 603, 102 P.3d 406 (2004); and *State v. Reser*, 244 Kan. 306, 767 P.2d 1277 (1989), to argue that this case did not warrant the instruction. In *Baker*, our Supreme Court held that the no-sympathy instruction was not warranted in a case with evidence that a murder victim was paraplegic and suffered from extreme pain and physical weakness when he was killed. 281 Kan. at 1005. Our Supreme Court made a similar holding in *Holmes* where the family members of a murder victim began crying and were escorted out of the courtroom. 278 Kan. at 635-36. Finally, in a case involving facts more closely analogous with the crime committed here, our Supreme Court held that there were no unusual circumstances requiring the no-sympathy instruction where a 14-year-old was testifying against her stepfather for rape and sodomy. *Reser*, 244 Kan. at 317. These cases illustrate that the circumstances of this case are not so unusual that a no-sympathy instruction was required to curb the sympathies and prejudices of the jury.

To find that this case presents a sufficiently unique factual scenario warranting use of the no-sympathy instruction would ignore the regularity of this awful but prevalent situation. Because of this, we are not persuaded by Church's request for a new trial on

7

these grounds. In short, we find no clear error by the district court in not giving a no-sympathy instruction sua sponte.

*Did the district court err in denying Church's motion for a mistrial?*

Church argues that the district court erred in denying his requests for a mistrial after the jury heard evidence implying that he had a criminal history and after a juror reportedly used his or her cell phone during the trial.

Although Church attempts to refute the applicable standard of review, the law surrounding the district court's decision here is well settled. We review the district court's application of the two-step process provided in K.S.A. 22-3423(1)(c) for mistrials under an abuse of discretion standard. Judicial discretion is abused if the judicial decision: (1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact. *State v. Moyer*, 306 Kan. 342, 355-56, 410 P.3d 71 (2017).

In evaluating a motion for mistrial under K.S.A. 22-3423(1)(c), the district court must first decide if there is prejudicial conduct, inside or outside of the courtroom, resulting in a fundamental failure in the proceeding. If so, the district court must next decide whether the conduct makes it impossible to continue the trial without injustice or whether the prejudicial conduct's damaging effect can be removed or mitigated by an admonition, jury instruction, or other action. *Moyer*, 306 Kan. at 356; see *State v. Sherman*, 305 Kan. 88, 118-19, 378 P.3d 1060 (2016).

To determine whether an error makes it impossible to proceed with the trial without injustice and requires a mistrial, a court must assess whether the fundamental failure affected a party's substantial rights under the harmless error statutes, K.S.A. 2018 Supp. 60-261 and K.S.A. 60-2105, if a right guaranteed by the United States Constitution is not implicated; but if a constitutional right is implicated, the error must be assessed

8

under the constitutional harmless error standard in *Chapman v. California*, 386 U.S. 18, 23, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). *State v. Logsdon*, 304 Kan. 3, 39, 371 P.3d 836 (2016).

The first instance of alleged prejudicial activity at trial occurred when the State was questioning Detective Derek Purcell, the lead detective in this case. The State inquired how Purcell first contacted Church after V.R.'s account was reported to the police. Purcell responded, "[V.R.] would refer to Steven as Zero so I started checking police department records looking for the identifying information she had given to find someone that matched that description. That was how I came up with Steven Church." The State then asked what form of communication the detective used to contact Church and if a meeting with him was scheduled. It was at this point that Church's counsel objected to the State's use of the police records on the basis that they violated a pretrial motion in limine. The district court had previously granted Church's oral motion in limine and in a handwritten minute order had barred admission of "information re [Church's] prior bad acts or convictions." Church also moved for a mistrial. The district court denied Church's request after finding that the detective "did not mention any sort of criminal conviction or any sort of criminal history or anything like that. . . . It did not in my eyes violate the order in limine."

The second occasion of alleged prejudice Church complains about came soon after the first. The State showed the jury the video recording of Church's interview with Detective Purcell. In the video, Purcell mentioned Church's previous mug shots. Church objected again, arguing that the discussion regarding mug shots also violated the district court's order in limine because it implied that Church had a prior criminal history. Church again requested a mistrial. The district court agreed with Church that the reference to the mug shots violated the order in limine but held that the reference did not merit a mistrial. The district court also noted that Church's counsel admittedly had reviewed the video before trial but did not object to the video after doing so. Before proceeding, however, the

district court reviewed the remainder of the video to ensure that no other prejudicial material was contained in it. After reviewing it, the parties agreed that five additional redactions were required. Those redactions were made before the jury viewed the remainder of the video.

Finally, during the trial Church objected to a juror's conduct but ultimately did not request a mistrial based on the juror's action. Church's counsel was apparently notified that a juror was texting while evidence was being presented. Church notified the district court but only requested that the jurors be admonished. The court agreed and addressed the jury as a whole, reminding them that cell phones usage of any kind was not permitted during trial.

Church argues that each of these instances required the district court to declare a mistrial because the evidence was overly prejudicial. Church further argues that the juror misconduct impeded his constitutional right to a fair trial. In response, the State asserts that we should deny Church's claim here because he waited until two additional questions were asked before making an objection to the evidence. Thus, according to the State, Church failed to make a timely objection. The State also suggests that Church's arguments are nothing more than unsupported, conclusory statements that also lack merit. But even if we disregard the timeliness of Church's objection, as noted below, we have ultimately concluded that the evidence does not support Church's assertion that the district court abused its discretion in denying his requests for a mistrial.

The State cites two significant cases in support of the district court's decision not to declare a mistrial, *State v. Trotter*, 245 Kan. 657, 783 P.2d 1271 (1989), and *State v. Childs*, 198 Kan. 4, 422 P.2d 898 (1967). In *Trotter*, our Supreme Court addressed the State's reference to mugshots and held that the issue of prejudice must be decided on a case-by-case basis. 249 Kan. at 662. In *Trotter*, a detective testified regarding the manner in which his photograph lineup identifying the defendant was compiled. The detective

testified that mug shots from the bureau's identification system were used to find the defendant's photo. Our Supreme Court held that "the reference to 'mug shots' was brief and not sufficiently prejudicial to warrant a mistrial." 245 Kan. at 662. Likewise, in *Childs*, our Supreme Court held that a witness' reference to the defendant's mug shots was not reversible error. Instead, the court held that the proper remedy for the defendant was to move to strike. 198 Kan. at 12.

Just as in *Trotter* and *Childs*, the references to Church's arrest record and mug shots were also very short. Here, the jury only was briefly notified that Detective Purcell identified Church using police reports. Although the jury also heard a reference to mug shots in Church's interview with police, these were brief instances and were quickly identified and resolved. But we also are mindful that we need to exercise great care before concluding that there was no abuse of discretion by the district court in denying a mistrial.

Our Supreme Court has warned against giving blanket approval of similar situations in *Childs*:

> "We specifically condemn the tactics often employed by overzealous witnesses of injecting clearly incompetent testimony, not otherwise admissible, which implies the accused has a prior criminal record, in an obvious effort to create prejudice in the minds of the jury. Decisions in which the admission of such testimony has been held not to have resulted in prejudicial error must be confined to the specific facts of each case rather than an indication of carte blanche approval of the practice." 198 Kan. at 12.

Still, Church's argument here is ultimately unpersuasive to us. The district court responded quickly and appropriately in dealing with all three of the instances where potentially prejudicial conduct occurred. We cannot find that any of these alleged lapses during the trial amounted to a fundamental failure in the proceeding. And in our opinion the district court's prompt actions in response to defense objections certainly mitigated

any damaging effects resulting from the violation of pretrial orders in limine. Based upon our conclusions, Church has failed to establish an abuse of discretion on the part of the district court in denying various defense motions for mistrial.

As a final note, we believe Church's argument regarding the alleged juror misconduct is misplaced and is also unpersuasive. The State correctly notes that Church requested that the juror be admonished for his or her actions. Requiring reversal here would ignore that Church invited the alleged error. Once again, Church has failed to show how the district court's decision was an abuse of discretion.

*Did the district court err in denying Church's motion to suppress?*

In his final issue on appeal, Church argues that the district court erred in denying his motion to suppress his statements to Purcell.

A dual standard is used when reviewing a district court's ruling on a motion to suppress a confession. First, we review the factual underpinnings of the decision under a substantial competent evidence standard. Second, the ultimate legal conclusion drawn from those facts is reviewed de novo. In this process we do not reweigh the evidence, assess the credibility of the witnesses, or resolve conflicting evidence. *State v. Dern*, 303 Kan. 384, 392, 362 P.3d 566 (2015).

Church argues that he was not subjected to overt coercion but that his statements were nevertheless involuntary. Church's argument is mostly grounded on testimony given by his wife regarding his mental capacity and how it affected his ability to answer the detective's questions without coercion. In this regard, Church claims that his

> "free will was overborne by a combination of the nature of the detention and
> interrogation along with the fact that [Church] suffers from certain learning disabilities

12

and was unable to read beyond a rudimentary level . . . , had difficulty comprehending certain concepts, gets confused easily . . . and had a tendency to simply agree with people in stressful circumstances."

The State has the burden to prove the voluntariness of a confession by a preponderance of the evidence—that the statement was the product of the defendant's free and independent will. *Dern*, 303 Kan. at 392. In determining the issue, the district court looks at the totality of the circumstances surrounding the confession and determines its voluntariness by considering the following nonexclusive factors:  (1) the accused's mental condition; (2) the manner and duration of the interrogation; (3) the ability of the accused to communicate on request with the outside world; (4) the accused's age, intellect, and background; (5) the fairness of the officers in conducting the interrogation; and (6) the accused's fluency with the English language. *State v. Woods*, 301 Kan. 852, 867, 348 P.3d 583 (2015); see *Dern*, 303 Kan. at 392.

> "'These factors are not to be weighed against one another with those favorable to a free and voluntary confession offsetting those tending to the contrary. Instead, the situation surrounding the giving of a confession may dissipate the import of an individual factor that might otherwise have a coercive effect. Even after analyzing such dilution, if any, a single factor or a combination of factors considered together may inevitably lead to a conclusion that under the totality of circumstances a suspect's will was overborne and the confession was not therefore a free and voluntary act.' [Citation omitted.]" *State v. Mattox*, 305 Kan. 1015, 1043, 390 P.3d 514 (2017).

Before trial, Church filed a motion to suppress, arguing his statements to law enforcement were coerced and involuntary. Church's motion hinged on his low intellect and his inability to read, write, or do math at more than an elementary level. The district court held an evidentiary hearing on the matter.

Only Detective Purcell and McCabe testified at the hearing on the motion to suppress. Purcell testified that he set up an interview with Church and McCabe. They arrived on the same date and at the same time. He asked that Church wait in one of the interviewing rooms while he questioned McCabe first. Purcell testified that the door to the interview room where Church was waiting was locked but that he told Church to simply knock if he needed anything. According to Purcell, Church waited about 50 minutes to an hour in the locked interview room before his interview began and that he was in the interview room for a total of six hours. Purcell estimated that only three of the six hours were used to actually question Church about the allegations against him. Purcell further testified that Church was not handcuffed or shackled during his interview and that Church seemingly followed and understood the conversation.

McCabe testified that Church could not read or write and was "easily confused when asked questions." McCabe further testified that Church had an extreme learning disability but gave contradictory testimony as to whether Church had ever been formally diagnosed.

McCabe also called Church's ability to comprehend information into question before Church was interviewed by Purcell. In fact, she told Purcell that Church could not read or write. Knowing this, Purcell offered to read through Church's *Miranda* rights as he followed along. Church agreed and seemingly followed through the discussion of his rights with Purcell's direction. Church indicated he understood those rights and asked no questions before continuing to speak with Purcell.

While speaking with Purcell, Church initially denied ever touching V.R. inappropriately. However, Church eventually confessed to having sexual contact with V.R. As a result, Church was arrested after the interview was over.

14

After reviewing the video of Church's interview and the arguments and evidence presented at the hearing, the district court made its ruling. The district court found that Church appeared to be sober and that he "respond[ed] appropriately to the detective's questions." The district court also further stated:

> "There is some evidence that Mr. Church is illiterate and that he can perhaps read and write at a very primitive level and there is some evidence of a learning disability. That evidence was provided by his wife.
>
> . . . .
>
> "While I realize that he may have a learning disability, I don't know the extent of that learning disability. So all I have to go on is the evidence that I've seen on the interview and the video and what's been explained by the people who have testified here in court.
>
> "In the interview Mr. Church did not appear confused. He did not appear to be unable to track the detective's questions. He did not respond repeatedly with I don't understand or that doesn't make any sense or I can't follow the questions.
>
> "If one watches the interview, he appears simply to be in a discussion with the detective. So my evaluation of his mental condition, while he may suffer from some learning disability, that he was able to participate adequately in the interview and answer the questions appropriately."

The district court also noted that the six-hour interview was lengthy but that the extended amount of time was in part due to the need to question Church's wife first. The district court further found that Purcell "did not make any threats, promises or deceive [Church] in any way." Based on this evidence, the district court found that the State met its burden of proving Church's statements were made knowingly and voluntarily and were of his own free will.

Viewing the totality of the circumstances here, we are convinced that the district court properly denied Church's motion. Although McCabe testified that Church was mentally disabled, no documentation was submitted to confirm her testimony. While it is correct that Church was locked in an interview room for six hours, he was offered water

15

and bathroom breaks, and he did take one bathroom break. Additionally, only three of those hours were actually used to question Church.

Church was 33 years old at the time of his interview. He was read his *Miranda* rights and did not make any indication that he did not understand those rights. Detective Purcell testified that Church seemingly tracked the conversation and gave "rational responses . . . appropriate to the questions [being asked]." After reviewing the video, the district court agreed with Purcell and found that Church understood the questions and answered appropriately. Our review of the video confirms the soundness of that finding.

The State cites *State v. Walker*, 283 Kan. 587, 153 P.3d 1257 (2007), to support its argument that the district court properly denied Church's motion to suppress. In *Walker*, our Supreme Court affirmed the district court's decision to allow the defendant's confession into evidence despite the fact that the defendant was in the interview room for almost 13 hours and confessed after 8 hours of questioning. 283 Kan. at 597, 603. The State simply compares that time to the time frames relevant here in arguing that the confession was voluntarily given. This comparison is somewhat applicable but does little to actually assist our review of the issue presented. On the other hand, Church's brief does not provide us with any factually similar cases and also does not address the majority of the applicable factors for this analysis.

We note that our Supreme Court conducted a similar factual analysis in *State v. Woods*, 301 Kan. 852, 348 P.3d 583 (2015). In *Woods*, a defendant on trial for murder argued that his statements to police were involuntary because he was in the interview room for six hours, had an IQ in the mild mental retardation range, wrongly believed he had to speak with police to get information about his wife and children, and had previously been diagnosed with schizophrenia. Our Supreme Court held that the defendant's inculpatory statements were voluntarily given after noting that the defendant's actual interview lasted only about 90 minutes; the defendant told police he had graduated

16

from high school; and the defendant seemingly understood the questions as they were posed and answered them appropriately. 301 Kan. at 867-68. *Woods* bears a significant factual resemblance to the circumstances of Church's interview.

Ultimately, we believe that no one individual factor, standing alone, suggests that Church's free will was overcome. Moreover, Church is required to "show he was coerced into confession." *Woods*, 301 Kan. at 868; see *Colorado v. Connelly*, 479 U.S. 157, 163-65, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986) (low intellect not basis for finding statement involuntary if no coercion). We believe he has not met his burden to show such coercion. Under the totality of the circumstances of the interview, we hold that Church's statements were a product of his own free and independent will. Thus, the district court did not err in denying the motion to suppress Church's statements during his interview with Detective Purcell.

Affirmed.