No. 62,511

STATE OF KANSAS, *Appellee*, v. HERMAN TROTTER, JR., *Appellant*.

(783 P.2d 1271)

Opinion filed December 8, 1989.

*John S. Sutherland*, of Kansas City, argued the cause and was on the brief for appellant.

*Wesley K. Griffin*, special prosecutor, argued the cause, and *Nick A.*

Tomasic, district attorney, and *Robert T. Stephan*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

NICHOLAS W. KLEIN, District Judge, assigned: Herman Trotter, Jr., was convicted of the aggravated robbery, K.S.A. 21-3427, and aggravated kidnapping, K.S.A. 21-3421, of William Culbert. Trotter was tried for these offenses along with a codefendant, Toni Jarmon a/k/a Toni Carter.

In addition to the Culbert incident, Trotter and Jarmon were originally both charged with aggravated burglary, kidnapping, and misdemeanor theft in an incident involving an elderly man named Wade Leroy Webster. The evidence in the Webster incident showed that Jarmon and a male person entered the victim's house while he was sleeping, tied him up and proceeded to take property from the house. At the preliminary hearing, the victim made a very tentative identification of Trotter and later stated that he "couldn't exactly swear it was him." The net result was that the district court refused to hold Trotter to answer for the charges arising out of the second incident. The Culbert and Webster cases were nevertheless tried together after Trotter's motion for separate trials, pursuant to K.S.A. 22-3204, was denied. The transcript of the proceedings of the hearing on that motion was not included in the record on appeal.

Persons may be charged in the same complaint, information, or indictment pursuant to K.S.A. 22-3202(3) "[i]f they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting the crime or crimes." The statute further provides that not all the defendants need be charged in each count.

It is obvious that the State believed that Trotter participated in both transactions with his codefendant. On appeal, Trotter relies on principles governing misjoinder of defendants and cites *State v. Hunter*, 241 Kan. 629, 633, 740 P.2d 559 (1987). *Hunter* presupposes that the defendants are jointly charged with the same crime and does not address joinder of charges and defendants.

The failure of Trotter to furnish a transcript of the hearing on the record of the motion for a separate trial is fatal to Trotter's claim of error. As stated in *State v. Bright*, 229 Kan. 185, Syl.

¶ 6, 623 P.2d 917 (1981), "An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, we presume that the action of the trial court was proper." This court cannot determine whether the issue of misjoinder was ever presented to the trial court and, therefore, whether it was preserved for appeal. Trotter cannot argue severance to the trial court and then raise misjoinder for the first time on appeal. If faced with a misjoinder argument, the trial court may have ruled differently or the State may have tried the case differently. See K.S.A. 22-3208(3); *State v. Townsley*, 217 Kan. 102, 535 P.2d 1 (1975).

Trotter next contends the trial court erred in permitting Webster to testify that Trotter's mother returned to him a television set taken in the Webster burglary. Trotter made no contemporaneous objection to that testimony; in fact, he called his mother to testify to the contrary. K.S.A. 60-404 requires such an objection. Even though Trotter made a motion in limine prior to trial to prohibit evidence concerning the return of the TV set, the motion was denied. When such a motion is denied, the moving party must object again at the time the evidence is presented to preserve the issue on appeal. *Douglas v. Lombardino*, 236 Kan. 471, Syl. ¶ 2, 693 P.2d 1138 (1985).

Trotter raises numerous complaints of error regarding his convictions in the Culbert incident. The victim, Culbert, testified that he was acquainted with Jarmon and that she came to his apartment with Trotter. Culbert scuffled with Trotter and received a fractured cheekbone and cuts to his hands. Culbert testified that he was tied up and that money, food, women's shoes, a watch, his keys, and some "knicknacks" were taken from his apartment. He further testified that, when he returned from being treated at the hospital for his injuries, he discovered that his car had been taken. Culbert was then permitted to testify that later the codefendant's sister called him, after which time he recovered his car. Trotter complains on appeal that the phone call evidence was hearsay. We disagree. No evidence of the out-of-court statement by the third party was offered to prove the truth of the matter stated; only the fact that the victim recognized the voice as that of the codefendant's sister was admitted into evidence. The probative value of the evidence depended on the

credibility of the victim, who was present for cross-examination and was cross-examined at length concerning his recognition of the voice of the codefendant's sister. At no time did the victim testify to the content of the conversation.

Trotter next complains about the conflicting testimony as to the time of the offenses for which he stands convicted. Reference to records maintained by the apartment complex where Culbert resided differed somewhat from the times stated by Culbert. An officer testified for the defense and corrected, from his records, the time which he had given in the State's case in chief as to when he had been dispatched to the scene of the crimes. The State then offered the testimony of the police dispatcher in rebuttal, who produced records tending to show that the officer had been dispatched at a different time than the officer's records showed. Neither the name of the rebuttal witness nor the dispatcher's records had been previously furnished to the defendant. Under Kansas law, however, the names of rebuttal witnesses are not required to be listed by the State. *State v. Hunter*, 241 Kan. at 638. Documents used in rebuttal need not be produced pursuant to the discovery procedure unless they are otherwise within the scope of K.S.A. 22-3212 and K.S.A. 22-3213.

Trotter also complains of the failure of the trial court to allow him to discredit the witness by showing prior convictions of Culbert for possession of and sale of drugs. When the police arrived at Culbert's apartment after the robbery, they found drug paraphernalia on a table in the apartment. Culbert told police that the defendants must have left the paraphernalia. He testified at trial that he did not know where the items came from or how they came to be in his apartment.

Trotter relies on *State v. Macomber*, 241 Kan. 154, 734 P.2d 1148 (1987), to show that the trial court's ruling was reversible error. In *Macomber* the court reversed the trial court for failure to allow the defendant to introduce collateral evidence tending to show that a witness (Fairchild) had lied at the preliminary hearing when asked whether he was under the influence of drugs and when he denied that he had ever used drugs. Farichild was asked at trial if he had ever lied under oath. When the witness denied that he had, the defense proffered the testimony of two other witnesses who would testify that the witness had smoked

marijuana on the way to the preliminary hearing and was involved in various drug deals at the time of the hearing. The *Macomber* court held: "Since Fairchild's testimony regarding the appellant's admission of criminal activity was essential to the State's case, the trial court should have admitted the evidence showing the witness had testified falsely." 241 Kan. at 159.

Whatever may be said for the ruling in *Macomber* on this point, the situation in the case at hand bears no factual similarity to *Macomber* and defendant's reliance on *Macomber* is misplaced.

In this case, the victim was never questioned as to his use of drugs and testified only that he did not know how the paraphernalia in question found its way into his apartment. For the above reasons and those contained in *State v. Jarmon,* 245 Kan. 634, 783 P.2d 1267 (1989), we find no error in the refusal to admit the testimony of the victim's prior drug conviction.

Trotter next contends the trial court erred in not declaring a mistrial. The trial court overruled a motion for mistrial made by counsel for Jarmon following a police witness' use of the phrase "mug shot."

Michael Webb was the police detective assigned to investigate the Culbert robbery. Webb testified as to photo lineups that he set up for Culbert, in which Culbert identified both defendants. The State questioned Webb as to his procedure for setting up the photo identification. In response to one of the questions, Webb said, "Well, depending on where the photograph was . . . I can either obtain mug shots in pictures from our . . . identification bureau." There was no more testimony concerning the photo lineup. Trotter contends that the mention of the words "mug shot" was so prejudicial that there should be a presumption of a mistrial. "Declaration of a mistrial is a matter entrusted to the trial court's discretion, which decision will not be set aside on appeal unless abuse of discretion is clearly shown. The defendant has the burden of proving he was substantially prejudiced." *State v. Massey,* 242 Kan. 252, Syl. ¶ 4, 747 P.2d 802 (1987).

Trotter asserts that mention of the words "mug shots" is analogous to mention of the word "insurance" in a civil case. Mere reference to a defendant's insurance in an automobile injury case is grounds for reversible error. *White v. Goodville Mut. Cas.*

*Co.*, 226 Kan. 191, 192, 596 P.2d 1229 (1979). Trotter contends that the trial court should not have discretion in declaring a mistrial where the words "mug shot" have been used.

This court was faced with a similar factual situation in *State v. Childs*, 198 Kan. 4, 11-12, 422 P.2d 898 (1967):

"That portion of the officer's answer, 'I secured mug shots,' was clearly unforeseeable, and, in fact, was an unresponsive answer to a proper question; therefore, it was incumbent on the defendant to move to strike the objectionable portion of the answer.

. . . .

"Notwithstanding the procedural shortcomings which normally would preclude review by this court, we have examined the record and are of the opinion the reference to 'mug shots' did not result in prejudicial error under the circumstances narrated."

This court did not condone such testimony, even where it was inadvertent, but held that whether a reference to "mug shots" is prejudicial error must be decided on a case-by-case basis. In the case at bar, the reference to "mug shots" was brief and not sufficiently prejudicial to warrant a mistrial.

Trotter next argues it was unfair that the State was given 40 minutes for closing arguments, while the defendants received only 30 minutes each. Trotter does not cite any case law, but cites K.S.A. 22-3414(4). That statute sets out the order in which closing arguments should be made, but does not set out any guidelines for the time to be allowed for closing arguments.

The State originally requested one hour for closing argument and 30 minutes for each defendant. Trotter's attorney did not object to the request, but the codefendant's attorney did. Counsel for codefendant then suggested that a compromise at 45 minutes allowed to the State was still too long. The trial court then decided to allow the State 40 minutes and each of the defendants 30 minutes.

"The limitation of time for arguments of counsel is within the sound discretion of the trial judge." *State v. Nunn*, 244 Kan. 207, 214, 768 P.2d 268 (1989). It was not an abuse of discretion for the trial court to allow the State ten extra minutes where there were two defendants.

Trotter claims that the trial court erred in denying his motion for acquittal at the close of the State's evidence.

"In passing on a motion for judgment of acquittal, a trial judge must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact therefrom, a reasonable mind, or rational trier of facts, might fairly conclude guilt beyond a reasonable doubt. [Citations omitted.]" *State v. Holley,* 238 Kan. 501, 511-12, 712 P.2d 1214 (1986).

Trotter argues that Culbert's identification was the only evidence connecting him to the crime and that Culbert's testimony was so inconsistent that it could not be believed. The security monitor, however, testified that the codefendant was accompanied by a black male. Although the monitor could not positively identify Trotter, he said that Trotter strongly resembled the man and could be the man. The codefendant testified that she and Trotter were intimately involved. An appellate court will not reweigh the evidence. "It is the jury's function, and not an appellate court's, to weigh the evidence and pass upon the credibility of witnesses. [Citations omitted.] An appellate court will not substitute its evaluation of the evidence for that of the jury." *State v. Holley,* 238 Kan. at 511.

The record shows that the trial court reviewed the evidence carefully before denying the motion for acquittal. The trial court found that the State had established a prima facie case on each of the counts. As the outcome of this case was primarily controlled by the credibility of the witnesses, it was proper for the trial court to allow the case to go to the jury. See *State v. Jarmon,* 245 Kan. 634.

Trotter argues the trial court erred in denying his motion for a new trial. His motion raised two grounds for granting a new trial: that the trial court erred in not granting Trotter a separate trial, and that the trial court erred in not allowing evidence of Culbert's drug convictions.

"A new trial may be granted in the interest of justice, but such grant lies within the sound discretion of the trial court." *State v. Reynolds,* 230 Kan. 532, 539, 639 P.2d 461 (1982). Both issues raised by Trotter in his motion for a new trial have been previously discussed in this opinion; therefore, the arguments need not be repeated here.

Trotter had previously been convicted of attempted aggravated robbery, aggravated battery, and attempted forgery. Trotter con-

cedes that his sentences do not exceed the statutory limits but contends, nevertheless, that the sentences are excessive in relation to the offenses for which he was convicted.

Under the Habitual Criminal Act, K.S.A. 21-4504, the State may move to enhance a defendant's sentence where the defendant has previous felony convictions. The State gave Trotter notice prior to trial that it intended to invoke the Act. Where it is the defendant's second felony conviction, the trial court has discretion as to whether it will enhance the sentence. K.S.A. 21-4504(a). Where the defendant is being convicted for a third or subsequent time, as was Trotter in this case, the statute states that the trial court shall enhance the sentence. K.S.A. 21-4504(b).

The sentences imposed were within the statutory limits of K.S.A. 21-4501 and K.S.A. 21-4504 for class A and class B felonies at the time of sentencing.

"A sentence imposed by a trial court will not be disturbed on the ground it is excessive, provided it is within the limits prescribed by law and within the realm of discretion on the part of the trial court, and the sentence is not the result of partiality, prejudice, oppression, or corrupt motive. [Citations omitted.]" *State v. Doile,* 244 Kan. 493, 503-04, 769 P.2d 666 (1989).

Trotter contends the trial court's instructions to the jury were erroneous. The trial court gave the following instructions on aggravated kidnapping:

"The defendants are charged in Count II with the crime of Aggravated Kidnapping. The defendants plead not guilty.

"To establish this charge, each of the following claims must be proved:

"1. That the defendants took or confined William S. Culbert by force or threat;

"2. That it was done with intent to hold such person to facilitate flight or the commission of any crime;

"3. That bodily harm was inflicted upon William S. Culbert; and

"4. That this act occurred on or about the 17th day of November, 1987, in Wyandotte County, Kansas."

The defendants requested that the words "flight or the commission of any crime" be replaced with "aggravated robbery" to conform the wording of the instruction with the information filed in the case. The instruction given was in conformity to PIK Crim. 2d 56.25.

In *State v. Redford*, 242 Kan. 658, 750 P.2d 1013 (1988), the defendant raised a similar argument. This court noted that, although the general rule is that instructions should follow the charges in the information and not be broader than the information, it was not error for the trial court to give the above instruction.

"The broadening of the instruction did not charge an additional crime but only stated several different kinds of intent by which aggravated kidnapping could be committed. The charge of aggravated kidnapping under the statute fully advised the defendant of the nature of the charges against him and did not mislead him in preparing his defense." 242 Kan. at 670.

Trotter alleges that it was error to instruct the jury on aiding and abetting, as he was charged as a principal in the case, not as an aider or abettor.

"By statute and case law this jurisdiction has long held that any person who counsels, aids or abets in the commission of any offense may be charged, tried and convicted in the same manner as if he were a principal. [Citations omitted.] Moreover, defendant's argument that she should have been charged in the information with aiding and abetting the aggravated battery rather than with the substantive offense has been rejected by this court." *State v. Smolin*, 221 Kan. 149, 152, 557 P.2d 1241 (1976).

In *State v. Bryant*, 228 Kan. 239, 246, 613 P.2d 1348 (1980), this court held that it was not error for the trial court to instruct the jury on aiding and abetting where the defendant had been charged as a principal. In the case at bar, it is conceivable that the jury might conclude that one of the defendants was the principal in the Culbert robbery and the other was merely an aider and abettor. Therefore, it was wise for the trial court to instruct the jury on the law of aiding and abetting.

The trial court's instruction on the burden of proof was virtually identical to PIK Crim. 2d 52.02. The defendants requested that the first sentence of the instruction be amended to read: "The State has the burden of proving the defendant is guilty beyond a reasonable doubt." The trial court said that the jury's burden to determine guilt beyond a reasonable doubt was adequately covered in the second paragraph of the instruction.

The instruction clearly stated, "If you have reasonable doubt as to any of the claims made by the State, you should find the defendant not guilty." PIK Crim. 2d 52.02 has previously been

approved by this court. *State v. Mack,* 228 Kan. 83, 88, 612 P.2d 158 (1980).

Trotter also alleges that the trial court erred in refusing to give certain jury instructions. All of the requested instructions which the trial court refused to give and which Trotter now alleges should have been given were requested by the attorney for the codefendant, Jarmon; nevertheless, we will consider the points.

The defendants requested the trial court to instruct the jury on testimony taken before trial, PIK Crim. 2d 52.12. Defense counsel requested this instruction because of references to testimony at the preliminary hearing. Trotter does not cite any case law in support of his argument on this instruction. The instruction appears to be designed for situations in which recorded testimony is read, as when a pretrial deposition is taken and the witness is unavailable at trial. In this case, the transcript of the preliminary hearing was used to impeach the victims on the stand. It was not error to omit the instruction.

Trotter now objects to the failure to give PIK Crim. 2d 60.05 and PIK Crim. 2d 67.18. These instructions deal with the crimes of perjury and possession of a controlled substance or drug paraphernalia. The defendants requested these instructions in connection with the testimony of Culbert. Culbert admitted that he had lied under oath at the preliminary hearing regarding the drug paraphernalia which had been found in Culbert's apartment.

This request had absolutely no merit. Culbert was not on trial, and neither of the defendants were charged with perjury or possession of drug paraphernalia. The requested instructions were obviously not applicable in this case.

Trotter now objects to the failure to give PIK Crim. 2d 52.05, concerning stipulations and admissions. This request arose out of Webster's testimony. At trial, Webster testified that the intruders threw a quilt over his head and he told them to remove it because it was smothering him. Webster had not mentioned this at the preliminary hearing or in his original statement to to police, and the defense attempted to impeach him based on that fact during cross-examination.

Webster had not brought his glasses to trial and could not read from the preliminary hearing transcript. Because the trial was taking much longer than anticipated and the jury appeared to be

restless, the prosecutor stipulated for the record that Webster had never said anything at the preliminary hearing about asking the intruders to remove the covers because he was being smothered.

A reading of the notes following PIK Crim. 2d 52.05 indicate that the instruction is to be given where certain stipulations as to facts in controversy and questions of law have been made during the course of a pretrial motion. That was not the case here. The prosecution made the stipulation contemporaneously to allow the trial to proceed smoothly. Even if it was error to omit the instruction, it was not prejudicial enough to warrant reversal.

Trotter now claims that the trial court erred in not advising the victim, Culbert, of his right to counsel upon his admission of perjury. If the trial court erred in not advising Culbert of his rights, it was not prejudicial to Trotter. Culbert was not on trial, nor is he bringing this appeal. Trotter has no standing to demand that a witness against him be advised of his constitutional rights.

We find no reversible error and affirm the judgment of the trial court.

Affirmed.

SIX, J., not participating.