NOT DESIGNATED FOR PUBLICATION

No. 119,793

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

RAHDAMES S. ZIELIENSKI,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; BENJAMIN L. BURGESS, judge. Opinion filed August 30, 2019. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., BRUNS and WARNER, JJ.


PER CURIAM: Rahdames S. Zielienski appeals after a jury convicted him of aggravated kidnapping and aggravated battery. On appeal, Zielienski contends that the prosecutor made two misstatements during his opening statements that constitute prosecutorial error. He also contends that the prosecutor made an improper "golden rule" argument during his closing statement. Applying the standard of review set forth by the Kansas Supreme Court in *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016), we find no reversible error. Moreover, we conclude that there is no reasonable probability

1

that any of the alleged errors by the prosecutor contributed to the verdict or denied Zielienski the right to a fair trial. Thus, we affirm.

FACTS

On September 6, 2017, the State of Kansas charged Zielienski with aggravated kidnapping, aggravated battery, and aggravated assault. The charges arose out of incidents that occurred in August 2017. On August 19, 2017, Xavier Reyes was forced into a pickup truck by a man with a baseball bat, taken to an alley about five blocks away, punched in the face, and struck with the bat. The attacker told Reyes that he had until the next day to pay an outstanding debt relating to the sale of drugs that he allegedly owed.

The following day, Reyes received two messages on Facebook—from someone using the name "Sowhats Itgonb"—threatening to "finish what I started yesterday" if the alleged debt was not paid. The first message threatened that if Reyes attempted to "elude the situation," that the sender would "come back" and "spray that bitch up till everybody dead." In addition, the sender demanded that Reyes give him "the title to your whip or 1200 dollars if not may god watch over u and your family." Similarly, the second message stated that the sender was at Reyes' gravesite "getting it ready and for good old time sake I made 4 more holes for the fam." The sender also told Reyes to "tell your friends goodbye not your family cause they going with u."

The case proceeded to a jury trial on May 21, 2018. Prior to the start of trial, the district court took up several issues with counsel. One of the issues related to the use of the word "mugshot" when referring to a photo lineup. A review of the record reveals the following discussion occurred on the record:

"[DEFENSE COUNSEL]: One other minor issue. The State—I anticipate the State presenting [a] photographic lineup. I understand why the State's doing it. The photographic lineup appears to be mugshots. I just wanted to make sure that the

2

photographs are not referred to as mugshots or any reference made to a prior arrest or criminal history.

"[PROSECUTOR]:  No objection.

"The Court:  Very well."

After both the prosecution and defense counsel gave opening statements, the State presented the testimony of 6 witnesses and introduced 12 exhibits into evidence. After the State rested, Zielienski presented the testimony of his girlfriend who testified that he was with her on the days in question except for when either of them was at work. At the conclusion of the trial, the jury convicted Zielienski of aggravated kidnapping and aggravated battery but acquitted him of aggravated assault.

The district court denied a posttrial motion for judgment of acquittal and a motion for a new trial filed by Zielienski. However, the district court granted him a downward durational departure. Although Zielienski faced a presumptive prison sentence of 618 months based on his criminal history, the district court ordered him to serve concurrent sentences of 72 months for aggravated kidnapping and 13 months for aggravated battery Thereafter, Zielienski filed a timely notice of appeal.

ANALYSIS

*Issue Presented and Standard of Review*

The sole issue presented on appeal is whether the State committed prosecutorial error that denied Zielienski the right to a fair trial. First, Zielienski argues that the prosecutor committed error during opening statements. Second, he argues that the prosecutor committed error during closing arguments. Furthermore, Zielienski argues that his right to a fair trial was prejudiced by these alleged errors. In response, the State argues

3

that the prosecutor did not commit reversible error either during the opening statements or during the closing arguments.

In *State v. Sherman*, the Kansas Supreme Court explained the analysis to be used by appellate courts in evaluating claims of prosecutorial error:

> "These two steps can and should be simply described as *error and prejudice*. To determine whether prosecutorial error has occurred, the appellate court must decide *whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial.* If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. *In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by Chapman [v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, i.e., where there is no reasonable possibility that the error contributed to the verdict.' State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011), *cert. denied* 565 U.S. 1221 (2012). We continue to acknowledge that the statutory harmlessness test also applies to prosecutorial error, but when 'analyzing both constitutional and nonconstitutional error, an appellate court need only address the higher standard of constitutional error.' [Citation omitted.]" (Emphases added.) *Sherman*, 305 Kan. at 109.

*Opening Statement*

Regarding opening statements, Zielienski asserts two errors. He first argues that it was error for the prosecutor to refer to "known mugshots" used by an investigating officer in attempting to identify the perpetrator. In addition, he argued that Reyes wrote on a photo lineup that he was "a hundred percent sure" that a photograph of Zielienski was the person who had attacked him in August 2017.

4

A review of the record reflects that the prosecutor agreed prior to trial not to refer to photographs used to identify Zielienski as "mugshots or [make] any reference made to a prior arrest or criminal history." Although no order of limine was entered, the district court acknowledged the agreement. Nevertheless, during the prosecutor's opening statement he said:

> "Now, Detective Guzman also does some work with Facebook. Looks up this person, Chicho . . . and tries to find pictures of that person. And does, in fact, find a Facebook account for a Chicho. Compares the Facebook photo to some known mugshots of . . . Zielienski and determines that that is, in fact, the same person."

Zielienski's attorney did not make a contemporaneous objection. Instead, he waited until the end of the first day of trial to raise the issue with the district court. A transcript of the proceedings contains the following discussion.

> "[DEFENSE COUNSEL]: And the other issue, this is something I believe I have got straightened out with [the prosecutor]. Opening statements, again, they aren't evidence, but we made it clear that—specifically on the photographic lineup it wouldn't be any identification pictures of . . . Zielienski being mugshots.
>
> "THE COURT: Being what?
>
> "[DEFENSE COUNSEL]: Mugshots.
>
> "THE COURT: Mugshots, okay.
>
> "[DEFENSE COUNSEL]: That was referred to in opening. I did not object at that point in order not to emphasize the issue. I talked to [the prosecutor], he acknowledges that that wasn't proper. But he said it was a slip and that that's not going to happen again. I don't—
>
> "THE COURT: The slip being that he referred to them as mugshots?

5

"[DEFENSE COUNSEL]:  As mugshots, not something he intentionally—

"THE COURT:  All right.

"[DEFENSE COUNSEL]:  —did. I took that represent, I don't think we're at a point where that affects the trial. But I—

"THE COURT:  Probably not.

"[DEFENSE COUNSEL]:  —sure we don't do that again.

"THE COURT:  And, obviously, we do need to be cautious about those things. At the same time, in my experience, the juries are not—they do not live in vacuums. They know what photo lineups are, they know where they come from, and that sort of thing. I mean there's so many law-related TV and movies that people go to in this day and age that I would be very surprised if they didn't arrive at the conclusion that they probably are mugshots whether they were referred to by that name or not. I mean, again, juries don't live in a vacuum. And as long as we don't dwell on it or emphasize it, that sort of thing, I think we're on safe turf, so to speak.

"DEFENSE COUNSEL]:  Good enough for me, Your Honor. Thank you."

Accordingly, it appears that both defense counsel and the district court accepted the prosecutor's representation that the reference to "known mugshots" was inadvertent. Moreover, defense counsel indicated that he was satisfied with how the district court handled the situation. Furthermore, we find no further reference during the trial to the photographs being mugshots.

In *State v. Trotter*, 245 Kan. 657, 661-62, 783 P.2d 1271 (1989), the Kansas Supreme Court found that a reference to a "mug shot" during the testimony of a witness in a criminal jury trial does not necessarily require a mistrial. Rather, the issue of whether there was prejudicial error "must be decided on a case-by-case basis." 245 Kan. at 662.

6

More recently, a panel of this court found that five references to a "mug-shot system" during a law enforcement officer's testimony—without a limiting instruction—required a new trial because it was likely the jury would have reached a different verdict had the error not occurred. *State v. Berney*, 51 Kan. App. 2d 719, 725-26, 353 P.3d 1165 (2015).

Here, the prosecutor admittedly misspoke by referring to "known mugshots" in his opening statement. As such, we turn to the question of prejudice. In determining whether Zielienski's right to a fair trial was prejudiced, we note that the misstatement was made during opening statements and not during the presentation of evidence. *State v. Nguyen*, 285 Kan. 418, 422, 172 P.3d 1165 (2007) (explaining that counsel receives "reasonable latitude" in opening statements with regards to facts it intends to prove). We also note that prior to counsel giving their opening statements, the district court had properly instructed the jury consistent with PIK Crim. 4th 50.070 that the remarks made by the attorneys "are not evidence."

Moreover the mention of mugshots was brief and was not repeated. Zielienski's attorney did not contemporaneously object nor did he request a limiting instruction because he understandably did not want to emphasize the misstatement to the jury. In fact, Zielienski's attorney told the district court that he did not "think we're at a point where [the prosecutor's remark] affects the trial." Accordingly, we do not find that there was a reasonable possibility that the inadvertent reference to "known mugshots" during opening statements contributed to the verdict or denied Zielienski the right to a fair trial.

Next, Zielienski argues that the prosecutor committed error when he stated during opening statements that the victim had written on a photo lineup that he was "a hundred percent sure" that the person identified was the perpetrator. Specifically, the prosecutor stated:

7

"Finally, [Reyes] is presented with a photo lineup, six individuals. It's a very common practice, and all look very similar. The idea is that this lineup allows officers to give the victim in any crime a chance to identify their assailant. [Reyes] identifies . . . Zielienski as the person who attacked him and kidnapped him on the 19th, circles it, circles his photo—or circles his number *and writes in on the lineup he's a hundred percent sure.* No hesitation, Detective Guzman will tell you." (Emphasis added.)

The State candidly admits that the prosecutor was mistaken when he said that Reyes had written that he was "a hundred percent sure" on the photo lineup. Moreover, a review of the record confirms that at the bottom of the first page of State's Exhibit 11, the number 4—which referred to a photo of Zielienski—was circled and initialed. However, the phrase "a hundred percent sure" does not appear on the document. In light of the prosecutor's misstatement, we will turn to the issue of prejudice.

As the State points out, Detective Erik Guzman—who conducted the photo lineups—testified at the preliminary hearing that he had asked Reyes how certain he was of his identification and Reyes responded that he was "100% sure." In particular, Detective Guzman testified that he had written down Reyes' response on a sheet containing follow-up questions. Additionally, Reyes identified Zielienski at trial and testified that he was sure that the person he selected from the photo lineups was the person who attacked him.

As indicated above, opening statements are not evidence and are simply intended to assist the jury in understanding what each side expects its evidence at trial will prove. *State v. McCorkendale*, 267 Kan. 263, 277, 979 P.2d 1239 (1999). Here, although the prosecutor made a mistake regarding who had written down the fact that Reyes was certain of his identification, he had a reasonable basis to believe that this evidence would be presented at trial. Hence, we do not find that there was a reasonable possibility that the misstatement during opening statements regarding who had written down that Reyes was

8

"a hundred percent sure" about his identification contributed to the verdict or denied Zielienski the right to a fair trial.

*Closing Argument*

Zielienski argues that the prosecutor improperly presented a "golden rule" argument during closing arguments. Specifically, Zielienski complains about the following argument made by the prosecutor:

> "A day or so later he gets these two messages from the Facebook account that says 'whats Itgonb.' When you go back to the jury room, you can take a look at those Facebook messages and see the threats that are made there. That if he doesn't pay up, it's not only going to be his life, but the life of his family.

> "And you heard Vanessa tell you about who is all in their family and the children they have in their family. *Can you imag[in]e, you know, the fear that that caused in Xavier Reyes*?" (Emphasis added.)

A "golden rule" argument is one which asks the jury to "place themselves in the position of a party, a victim, or the victim's family members." *State v. Lowery*, 308 Kan. 1183, 1208, 427 P.3d 865 (2018). In other words, "golden rule" arguments "'encourage the jury to decide the case based upon personal interest or bias rather than neutrality.'" 308 Kan. at 1208. As such, these arguments may constitute prosecutorial error because they can "'inflame the passions or prejudices of the jury'" or "'divert the jury from its duty to decide the case based on the evidence and the controlling law.'" 308 Kan. at 1208-09.

We must first consider whether the prosecutor's statement constitutes a "golden rule" argument. In doing so, we note that Kansas appellate courts held that no golden rule violation existed under similar circumstances. See *State v. Corbett*, 281 Kan. 294, 313-15, 130 P.3d 1179 (2006) (Prosecutor's argument never "put the jury in the position of the victim."). Based on our review of the record in the present case, we do not find the

9

argument made by the prosecutor to be a "golden rule" argument because the prosecutor did not ask the jurors to put themselves in the shoes of the victim.

Here, the prosecutor's argument and question was directed at assisting the jury in understanding why Reyes would have reasonably been scared by the threats directed at him and his family. So, the prosecutor did not ask the jurors to imagine being in the position of the victim but to imagine the fear that the threats caused the victim. Furthermore, we find this argument to fall within the wide latitude given to a prosecutor in light of the charges and the evidence presented at trial. The prosecutor was also pointing out why Reyes may have been hesitant to identify Zielienski at the preliminary hearing. Accordingly, we do not find that the question asked by the prosecutor rose to the level of prosecutorial error.

Even if we were to find error, we do not find that the prosecutor's argument was prejudicial in light of the circumstances presented. Here, we are dealing with an isolated extemporaneous argument that was not repeated. Moreover, the district court properly instructed the jurors that the closing arguments were not evidence and that any arguments not supported by the evidence should be disregarded. Specifically, the jurors were instructed prior to closing statements that "[s]tatements, arguments, and remarks of counsel are intended to help you in understanding the evidence and in applying the law *but they are not evidence.* If any statements are made that are not supported by the evidence, *they should be disregarded.*" (Emphasis added.)

Reviewing the prosecutor's argument in light of the entire record, we note that Reyes identified Zielienski as his attacker both in photo lineups and in the courtroom at trial. There was also testimony presented that the two men had known each other since they were children. In addition, Reyes informed the police that he knew the person who attacked him as "Chicho" and officers found a Facebook account under the name "Chicho Loko" that displayed Zielienski's photo as the profile picture. In separate interviews,

10

Reyes told two law enforcement officers that he knew the person who attacked him had the initials "S" and "D" tattooed on his forearms and the State introduced a photograph of Zielienski with these tattoos at trial. Further, there was surveillance video admitted into evidence that showed Reyes leaving the alley after being kidnapped and beaten.

In the face of this evidence, we find that there is no reasonable probability that any of the alleged errors by the prosecutor contributed to the verdict or denied Zielienski the right to a fair trial. As such, we conclude that there was no reversible error. We, therefore, affirm Zielienski's convictions.

Affirmed.