NOT DESIGNATED FOR PUBLICATION

No. 127,508

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

DONNA DIXON,
*Appellant.*


MEMORANDUM OPINION

Appeal from Wyandotte District Court; JENNIFER MYERS, judge. Submitted without oral argument. Opinion filed January 9, 2025. Affirmed.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, of Lawrence, for appellant.

*Nicholas Campbell*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.


Before GARDNER, P.J., HILL and JOAN M. LOWDON, District Judge, assigned.


PER CURIAM: Donna Dixon appeals her convictions of distribution of fentanyl and unlawful use of a communication facility, which arose from a confidential informant's controlled buy from Dixon. She raises two issues on appeal: whether the district court erred by denying her motion for a mistrial, and whether the district court erred by denying her request for a lesser included offense jury instruction on unlawful possession of a controlled substance. Finding no reversible error, we affirm Dixon's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

Dixon was arrested and charged with her crimes of conviction due to the efforts of C.M., a confidential informant for the Kansas City, Kansas Police Department (KCKPD). In September 2021, C.M. informed KCKPD he believed he could buy fentanyl from Dixon in a controlled buy. He arranged the transaction and then met with KCKPD officers who searched C.M. and his vehicle, gave him $150 in cash to purchase three fentanyl pills, and equipped C.M. with a live feed device.

C.M. then drove to the 7th Street Casino in Kansas City where he had arranged to meet Dixon. Once there, he called Dixon, and she met him in the parking lot of the casino in his car. The police listened to C.M. and Dixon's conversation in real time yet they heard no mention of drugs or money on the feed. Shortly after Dixon entered his car, C.M. completed the purchase of the pills, drove to a stop sign near the casino's entrance, and let Dixon out of the vehicle.

C.M. testified that the interaction between himself and C.M. during the controlled buy was extremely limited:

> "Here, money, go, is what I'm saying. There's not really a dialogue between us.
> "It's I want to get the purchase over and done with. It's nerve wracking. I did not feel comfortable doing it, but it was something that needed to be done. So I did it."

No audio conversation about buying drugs was captured, nor did any video show the physical transaction of drugs for money. But C.M. testified that he placed the $150 on the center console, Dixon took the $150, and she handed him three blue pills marked "M30." Surveillance video captured Dixon walking to the area where C.M. was parked, C.M. dropping her off at the stop sign after completing the controlled buy, and Dixon

walking back into the casino. C.M. identified Dixon in court as the person who sold him the fentanyl pills that day.

C.M. turned the three pills over to KCKPD, who sent them to the crime laboratory to be tested. The tested tablet was confirmed to contain fentanyl.

The State charged Dixon with one count of distribution of or possession with intent to distribute fentanyl, under K.S.A. 2021 Supp. 21-5705(a), and one count of unlawful use of a communications facility (a telephone) to arrange a drug transaction, under K.S.A. 2021 Supp. 21-5707.

During trial, Officer Angel Silvestre with KCKPD was asked how he had confirmed Dixon's identity from the information C.M. had given him about Dixon (her name and phone number) before the controlled buy. In response, Silvestre answered: "Just doing research through, like, our databases, jail databases, I was able to find a picture of Ms. Dixon."

Dixon's counsel objected and requested a mistrial, arguing Silvestre's answer was improper evidence of a prior crime under K.S.A. 60-455(a) because "[p]eople only get in the jail database by doing a bad act." The State replied: "I don't believe doing a database search is, in itself, introducing prior bad acts. Those searches can include not only the booking history but, really, any tag history of who people are associated with. There's no introduction that she did any other, any prior act." The district court judge denied the motion for mistrial, stating: "I believe the officer said that he used—he researched databases, including the jail. He did not specifically, from what I recall, say that he found her in a prior booking. He just said he researched that."

3

Still, the district court offered to warn the jury to disregard the testimony, and Dixon's counsel accepted that offer. So the district court judge admonished the jury: "The jury is to disregard what the officer testified to about how he performed that research."

During the jury instructions conference, Dixon requested a lesser included offense instruction on possession of fentanyl to the charged crime of distribution of fentanyl. Yet the language of the instruction Dixon requested does not appear in the record on appeal. The district court denied this request, holding:

> "Well, a lesser included crime is a lesser degree of the same crime, a crime where all elements of the lesser crime are identical to some elements of the crime charged.
> . . . .
> "When a Court determines whether a crime is a lesser included offense of another offense under K.S.A. 2022 Supp. 21-5109(b)(2), it applies a strict elements test and is limited to a comparison of the abstract elements of the offense charged. It does not consider the factual nuances of a specific case as they may bear on the satisfaction of the statutory elements of both crimes under examination.
> "In this case, possession of Fentanyl as an element of possession, that is not an element of distribution of Fentanyl.
> "So I will not be giving that instruction."

During deliberations, the jury asked, "May we have background of Donna Dixon with regards to matters of past convictions or alleged matters[?]" But the district court denied that request and responded, "You must consider only evidence that was admitted into evidence. See Instruction No. 2."

The jury found Dixon guilty as charged. The district court sentenced her to 32 months' imprisonment but suspended that sentence for 18 months' probation.

Dixon now timely appeals.

4

*Did the district court err by denying Dixon's motion for a mistrial?*

Dixon first argues that the district court erred by denying her motion for a mistrial based on the law enforcement officer's testimony that he used databases, including a jail database, to confirm her identity. Dixon contends that the fact she was found in law enforcement's database had no probative value but greatly prejudiced her right to a fair trial. She also argues that the district court factually erred by finding that law enforcement looked in multiple databases, one of which was a jail database. Dixon made a specific and timely motion for a mistrial, so she has successfully preserved this issue for our review. See *State v. Stanley*, 312 Kan. 557, 561, 478 P.3d 324 (2020) (holding timely and specific request for mistrial is required to preserve argument for appellate review).

*Standard of Review and Legal Maxims*

Under K.S.A. 22-3423(1)(c) a district court may declare a mistrial if prejudicial conduct either inside or outside the courtroom made it impossible for the trial to proceed without injustice to either party. This statute creates a two-step inquiry. First, the district court must determine whether there was a fundamental failure of the proceeding. If so, second, the district court must assess whether it is possible to continue without injustice. *State v. McCullough*, 293 Kan. 970, 980, 270 P.3d 1142 (2012). "In other words, the trial court must decide if the prejudicial conduct's damaging effect can be removed or mitigated by an admonition, jury instruction, or other action. If not, the trial court must determine whether the degree of prejudice results in an injustice and, if so, declare a mistrial." 293 Kan. at 980.

We review a district court's ruling on a motion for a mistrial for an abuse of discretion. 293 Kan. at 980. A judicial action constitutes an abuse of discretion if (1) it is

arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025). Dixon, as the party asserting the error, bears the burden of proving the district court abused its discretion. *McCullough*, 293 Kan. at 996.

*We find no fundamental failure in the proceeding.*

We first address Dixon's argument that the district court abused its discretion because its denial of her motion for a mistrial was based on an error of fact. Silvestre, a KCKPD officer, testified he confirmed Dixon's identity by "[j]ust doing research through, like, our databases, jail databases, I was able to find a picture of Ms. Dixon." Defense counsel's motion for a mistrial because of this statement was denied because the district court found: "I believe the officer said that he used—he researched databases, including the jail. He did not specifically, from what I recall, say that he found her in a prior booking. He just said he researched that."

Dixon argues that a fundamental failure in the proceeding occurred because the district court mistakenly found that Silvestre testified that he had searched different types of databases, when he had searched only the jail database. But even assuming error in this respect, Dixon must show prejudice.

Dixon also argues that the district court agreed that Silvestre's testimony was prejudicial when she stated: "Well, the fact that you mention a jail booking implies that she had been booked . . . [w]hich would be impermissible." But Dixon's argument takes the district court's statement out of context. That statement was made in response to the State's argument against a mistrial.

> "[THE STATE]: Your Honor, I am moving on from that line of questioning. I don't believe doing a database search is, in itself, introducing prior bad acts. Those

searches can include not only the booking history but, really, any tag history of who people are associated with. There's no introduction that she did any other, any prior act.

"THE COURT: Well, the fact that you mention a jail booking implies that she has been booked.

"[THE STATE]: Okay.

"THE COURT: Which would be impermissible. And I assume you told the officer not [to] mention that.

"[THE STATE]: Right. Any prior—yeah, any jail or—

"THE COURT: Okay. Your motion for a mistrial is denied. I believe the officer said that he used—he researched databases, including the jail. He did not specifically, from what I recall, say that he found her in a prior booking. He just said he researched that. And so I think that I'm going to deny your motion."

When viewed in context, this statement was not referring to the officer's testimony but to the introduction of evidence regarding prior bad acts. Both the court and the State agreed that such testimony would be impermissible.

Silvestre's testimony was that he searched through databases, one of which was a jail database, to confirm Dixon's identity. He never testified that he found a picture of her in a jail database or that she had any prior arrests, convictions, or bad acts. And no facts suggest that jail databases include only photos of persons booked into jail.

To the contrary, Dixon also argues that the mention of checking a jail database was improper evidence of prior bad acts under K.S.A. 60-455(a). Under that statute, "evidence that a person committed a crime or civil wrong on a *specified occasion*, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion." (Emphasis added.) K.S.A. 2024 Supp. 60-455(a). But Silvestre's testimony did not reference any specific prior crime, nor was his reference to "jail databases" used to prove Dixon's disposition to commit the crimes for which she was on

7

trial. Silvestre's testimony was not K.S.A. 60-455(a) evidence. We find no fundamental failure in the proceeding.

> *Any prejudice was mitigated by the district court's admonition to the jury not to consider the database testimony.*

Even so, we agree that mentioning things that imply a defendant has committed other crimes, like "mug shots" or "offender index," can be prejudicial, depending on the circumstances of each case. See *State v. Trotter*, 245 Kan. 657, 662, 783 P.2d 1271 (1989) (holding "whether a reference to 'mug shots' is prejudicial error must be decided on a case-by-case basis," and a brief reference was not enough to be prejudicial); *State v. Elkins*, 44 Kan. App. 2d 974, 983-84, 242 P.3d 1223 (2010) (brief testimony that defendant's DNA showed up in "offender index" in CODIS database was not prejudicial). But even if we assume that the brief reference to "jail databases" was a fundamental failure of the proceeding, Dixon's claim still fails.

If there is error, the district court must assess whether it is possible to continue without injustice by removing or mitigating the damaging effect of the prejudice through an admonition, jury instruction, or other action. *McCullough*, 293 Kan. at 980. If such things cannot cure or mitigate the error, the district court must determine whether the degree of prejudice results in an injustice and, if so, declare a mistrial. 293 Kan. at 980.

Here, the district court offered to admonish the jury to disregard the testimony, and Dixon's counsel accepted that offer. The district court judge then told the jury: "The jury is to disregard what the officer testified to about how he performed that research." Later, during the jury instruction conference, the district court asked if Dixon would like to include a similar instruction in the final jury instructions, but Dixon's counsel strategically declined that offer, stating: "I think it's better left alone at this point and not draw any more attention to it."

8

The mention of "jail databases" was brief and the district court took an extra protective step by admonishing the jury to disregard that reference. This sufficiently limits any prejudice caused by the mention of a jail database. Similar cases show that brief mentions of "mug shots" and "offender index," even without admonishments or curative jury instructions, have been found insufficiently prejudicial to warrant a mistrial. See *Trotter*, 245 Kan. at 662 (mention of "mug shots" did not warrant mistrial); *Elkins,* 44 Kan. App. 2d at 983-84 (mention that defendant's DNA showed up in "offender index" did not warrant mistrial).

True, the jury asked during its deliberations whether Dixon had a criminal record. Dixon contends this shows that the jury did *not* disregard Silvestre's brief mention of searching a jail database to confirm her identity. She contends that Silvestre's comment caused the jury to overlook weaknesses in the State's case and to convict her based on the jury's perception that she had a criminal record. But this is mere speculation. We find to the contrary based on two factors here.

First, in response to the jury's request for Dixon's criminal history, the district court judge told the jury "You must consider only evidence that was admitted into evidence. See Instruction No. 2." Jury instruction number two read:

> "In your fact finding you should consider and weigh everything admitted into evidence. This includes testimony of witnesses, admissions or stipulations of the parties, and any admitted exhibits. You must disregard any testimony or exhibit which I did not admit into evidence.
> "During the course of the trial the attorneys may have used police reports, written statements or other documents when questioning witnesses. You will not be provided copies of any of these to assist in your deliberations unless they were offered and admitted into evidence."

Jurors are presumed to follow the court's instructions. See *State v. Reid*, 286 Kan. 494, Syl. ¶ 18, 186 P.3d 713 (2008). We must determine prejudice in view of the entire record. See *Trotter*, 245 Kan. at 662. Combining jury instruction number two with the prior admonishment to disregard the mention of a jail database leads us to conclude that jurors did not consider any prior criminal history when assessing Dixon's guilt.

Second, the record reflects that the State put on a strong case against Dixon, contrary to Dixon's claim that the jury's perception of her criminal history led to her conviction in this "weak" case. The jury heard direct evidence from C.M. that Dixon sold him the three fentanyl pills. Video surveillance corroborated Dixon's movements that C.M. testified to, and law enforcement, who was watching the controlled buy, testified to the same version of events as C.M.

Dixon makes much of the fact that the video and audio from the controlled buy did not show a drug deal occurred. But C.M. explained that it was typical to use minimal or illusive communication during a drug deal. And while Dixon is correct that no audio or video recording expressly confirms that Dixon sold C.M. the fentanyl, that conclusion is strongly grounded in logic. Circumstantial evidence can support a conviction of even the greatest offense if the evidence allows a factfinder to find the elements beyond a reasonable doubt. To sufficiently support the conviction, circumstantial evidence does not need to exclude every other reasonable conclusion. *State v. Barnes*, 320 Kan. 147, 177-78, 563 P.3d 1255 (2025).

Circumstantial evidence was compelling here. Law enforcement testified to searching C.M. and his vehicle before the controlled buy to make sure he did not have any drugs on him. Law enforcement gave C.M. $150 to purchase the three fentanyl pills. Law enforcement saw him meet Dixon and then return to meet officers without stopping anywhere else. After C.M. met with Dixon, he no longer had the cash but had three

10

fentanyl pills that he testified he purchased from Dixon. The evidence supporting Dixon's guilt was far from weak.

Considering the entire record, we find no probability that any error in admitting the mention of a search in a jail database prejudiced Dixon to the point that it affected the outcome of the trial. The district court thus did not abuse its discretion by denying Dixon's motion for a mistrial.

*Did the district court err by denying Dixon's request for a lesser included offense instruction?*

Dixon next argues that the district court erred by denying her request for an instruction on unlawful possession of a controlled substance because possession was a lesser included offense of the offense she was charged with—unlawful distribution of or possession with the intent to distribute a controlled substance. She argues the instruction is legally and factually appropriate and, had the jury been given the instruction, it is reasonably probable that the jury would have found she possessed the fentanyl pills.

*Standard of Review*

Our review of alleged instructional errors is well established.

"Appellate courts apply a three-step inquiry to jury instruction issues, asking: (1) whether the appellate court has jurisdiction or whether the issue has been preserved for review; (2) whether an instructional error occurred, that is whether the disputed instruction was legally and factually appropriate when the entire record is reviewed in the light most favorable to the requesting party; and (3) whether, if error occurred, it is reversible, meaning is there a reasonable probability that any error affected the outcome of the trial in light of the entire record?" *State v. Alvarado-Meraz*, 321 Kan. 51, 70, 573 P.3d 266 (2025).

11

Dixon requested the lesser included offense instruction before the district court, so this issue is preserved for review. See *State v. Becker*, 311 Kan. 176, 182, 459 P.3d 173 (2020).

*Confusion over the charging document*

The only charging document in the record on appeal shows that Dixon was charged with possession with intent to distribute *or* distribution of fentanyl:

"[O]n or about the 29th day of September 2021, said defendant, Donna Dixon, did unlawfully distribute or possess with the intent to distribute less than 10 dosage units of Fentanyl, in violation of K.S.A. 21-5705(a) (DISTRIBUTION OF OR POSSESSION OF FENTANYL WITH INTENT TO DISTRIBUTE, Severity Level 4 Drug, Non-Person Felony)."

Yet at the instructions conference, the district court proposed an elements instruction for this count solely for distribution of a controlled substance:

"Instruction No. 4 is Count I. The defendant is charged with unlawfully distributing a controlled substance. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved: The defendant distributed Fentanyl; the quantity was fewer than ten dosage units; it occurred on or about the 29th day of September of 2021 in Wyandotte County, Kansas."

The district court explained that the State had not alleged during its case that Dixon simply possessed the fentanyl with the intent to distribute it, so the district court omitted that part of the statute from the jury instructions. See K.S.A. 21-5705(a) ("It shall be unlawful for any person to distribute or *possess with the intent to distribute* any of the following controlled substances."[Emphasis added.]).

Defense counsel then requested a lesser included offense instruction, and the court again stated that Dixon was not charged with possession:

"[DEFENSE COUNSEL]: Judge, I think given the way the evidence has come out about the video and that you don't see the defendant, you don't hear any language of exchange, the jury could find that she possessed it but not sold it.

"So, given how that's come out—I don't know that I anticipated that earlier—that could result in the jury just finding her guilty of possession and not selling.

"THE COURT: Well, she's not charged with possession.

"[DEFENSE COUNSEL]: I think that's a lesser included, is my point.

"THE COURT: Are you asking for a lesser included?

"[DEFENSE COUNSEL]: I believe I am.

"THE COURT: Okay.

"You've never mentioned that, so I wasn't prepared.

"[DEFENSE COUNSEL]: I get that. I understand.

"And it wasn't until you talked about the removal of it. I hadn't thought of it pretrial. But once the evidence came out that the defendant—or the [confidential informant], didn't testify—or hasn't at that point—is when it started percolating with me.

"THE COURT: I guess I don't understand the evidence of possession. She was never arrested with it, she never—

"[DEFENSE COUNSEL]: They could believe that she brought it to the car but just left it there, didn't sell, didn't leave with any money.

"THE COURT: I would have to—I don't know—I'm going to look up whether possession is a lesser included of distribution because she's not—she's not charged with possession with the intent to distribute. She's charged with just straight distribution.

"[DEFENSE COUNSEL]: I understand.

"THE COURT: We're going to have to do research now on whether or not that is a lesser included. We'll have to take that up."

After more evidence was presented, the district court revisited the lesser included instruction issue. Both the State and the district court voiced that Dixon was not charged with possession with the intent to distribute, for which a simple possession instruction would be appropriate:

13

"[DEFENSE COUNSEL]: And I'm asking for it based upon the fact that I believe the jury, that possession is—while the word isn't used in any of the elements, it's obviously a common-sense element that you have to have in order to distribute.

"And especially I believe that, based upon the testimony that came out, the jury could believe that the sale wasn't made but that maybe she had possession of it.

"And because of that, I'm asking the Court give a lesser included instruction for possession of Fentanyl.

"THE COURT: All right.

"State.

"[THE STATE]: Your Honor, if this was a case where it was possession with intent to distribute, that would make more sense. I believe that this is not a lesser included for the offense of distribution of Fentanyl.

"The elements stated in Instruction 4, the first one being that the distribution of Fentanyl happened. Mere possession, I don't believe, accurately depicts a lesser included offense in this situation.

"Therefore, we would object with the instruction of a possession of Fentanyl instruction.

"THE COURT: All right.

"Well, a lesser included crime is a lesser degree of the same crime, a crime where all elements of the lesser crime are identical to some elements of the crime charged. . . .

. . . .

"When a Court determines whether a crime is a lesser included offense of another offense under K.S.A. 2022 Supp. 21-5109(b)(2), it applies a strict elements test and is limited to a comparison of the abstract elements of the offense charged. It does not consider the factual nuances of a specific case as they may bear on the satisfaction of the statutory elements of both crimes under examination.

"In this case, possession of Fentanyl as an element of possession, that is not an element of distribution of Fentanyl.

"So I will not be giving that instruction."

The language of the only charging document in the record on appeal refutes the State's and district court's assertions that Dixon was charged only with distribution of fentanyl and not with possession of fentanyl with the intent to distribute. No amended

14

complaint charging Dixon with distribution and not possession of a controlled substance under K.S.A. 21-5705(a) is in our record on appeal. Nor does the State point us to such a document in its appellate brief.

The district court did not instruct the jury on possession with intent to distribute, even though Dixon was charged with it, but instructed only on distribution of fentanyl. But "[t]he general rule [is] that instructions should be confined to issues made by the pleadings and should not be broader or *narrower* than the information." (Emphasis added.) *State v. Booker*, 197 Kan. 13, 15, 415 P.2d 411 (1966); see, e.g., *State v. Trautloff*, 289 Kan. 793, 802, 217 P.3d 15 (2009) ("It is the long-established rule in Kansas that instructions should be confined to issues made by the pleadings and should not be broader or narrower than the information."). We thus consider the sole charge to be as in the original charging document—that Dixon unlawfully distributed *or possessed* with the intent to distribute fentanyl.

### *Legal and Factual Appropriateness*

Next, we consider whether an error occurred, assessing whether the requested instruction was legally and factually appropriate when viewed in the light most favorable to the requesting party. *State v. Gallegos*, 313 Kan. 262, 266, 485 P.3d 622 (2021). To assess whether an error occurred, we use an unlimited standard of review of the entire record. 313 Kan. at 266.

### *Legal Appropriateness*

Dixon was charged under K.S.A. 2021 Supp. 21-5705(a), which reads: "It shall be unlawful for any person to distribute or *possess with the intent to distribute* any of the following controlled substances or controlled substance analogs thereof." (Emphasis added.) Thus the given jury instruction, which stated only the distribution charge, was

15

narrower than the information, which charged both possession and distribution. And it is well-decided that simple possession is a lesser included offense of the crime of possession with intent to distribute. *State v. Martinez*, 317 Kan. 151, 170, 527 P.3d 531 (2023). The requested instruction on unlawful possession of a controlled substance was legally appropriate because Dixon was charged with the crime of possession with intent to distribute. See *Booker*, 197 Kan. at 15.

### *Factual Appropriateness*

When determining whether an instruction was factually appropriate, we review the evidence in the light most favorable to the requesting party, here, Dixon. *State v. Chavez*, 310 Kan. 421, 430, 447 P.3d 364 (2019). The question is whether "'there is *some* evidence that would reasonably justify a conviction'" for the lesser included offense. (Emphasis added). *State v. Plummer*, 295 Kan. 156, 168, 283 P.3d 202 (2012); *State v. Berkstresser*, 316 Kan. 597, Syl. ¶ 2, 520 P.3d 718 (2022) (same). Our analysis does not turn on whether the evidence at trial was more likely to support a conviction for the greater offense or the lesser offense. Rather, the question is whether the court would uphold a conviction for the lesser offense in the face of a challenge to the sufficiency of the evidence. *Martinez*, 317 Kan. at 171.

A simple possession instruction was factually appropriate here. Evidence showed that the confidential informant did not have any fentanyl pills in his car or on his person before meeting with Dixon, yet immediately after meeting with her, he did. A jury could find that Dixon brought the pills to the car and thus was in possession of them before she sold them to C.M. A conviction for possession of fentanyl would survive a sufficiency challenge under these facts.

Because the requested instruction was both legally and factually appropriate, it was error for the district court to refuse to give it.

16

*Reversibility of the Error*

Still, the district court's failure to give the requested instruction does not automatically necessitate reversal. Such an error is reversible if we find a "'reasonable probability that the error will or did affect the outcome of the trial in light of the entire record.'" *State v. Uk*, 311 Kan. 393, 397, 461 P.3d 32 (2020) (quoting *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 [2011]).

We find no such reasonable probability here. The State presented the testimony from the second person involved in the drug deal—C.M. He testified that Dixon entered his car, they talked briefly, she said "here" and gave him the three pills, he put the $150 cash on the center console, Dixon took the money, and then he dropped her off by the front of the casino. Law enforcement searched C.M. before and after the controlled buy. Before, he had no narcotics on his person or in his car and law enforcement gave him $150 in cash. Law enforcement observed him during the entirety of the controlled buy. After the controlled buy, law enforcement searched C.M. again and found he had three fentanyl pills and no cash.

Considering all the evidence, we find any error in not giving the requested instruction does not require us to reverse Dixon's conviction. We affirm her convictions.

Affirmed.